[882 NYS2d 234]

Carol Ann Epifani et al., Respondents, v Sale Johnson, Appellant.

Second Department, June 23, 2009

**APPEARANCES OF COUNSEL**

*Richard A. Dienst*, New York City (*Marshall R. Isaacs* of counsel), for appellant.

*The Mortner Law Office, P.C.*, New York City (*Moshe Mortner* of counsel), for respondents.

**OPINION OF THE COURT**

DICKERSON, J.

The plaintiffs, Carol Ann Epifani, Kelly Supple, and Agnetta

Oliverre, commenced this action against the defendant, Sale Johnson, to recover damages arising from their brief employment as members of Johnson's household staff. Epifani worked as Johnson's personal assistant from July 20, 2004 through November 30, 2004, at which time Johnson terminated her employment. Supple replaced Epifani as Johnson's personal assistant from October 27, 2004 through June 13, 2005, at which time her employment was terminated as well. Oliverre worked as Johnson's laundress, and held that position from sometime in 2004 until August 8, 2005, at which time she quit her job.

The complaint sets forth eight causes of action, sounding in fraudulent inducement (first cause of action), fraudulent misrepresentation (second cause of action), negligent misrepresentation (third cause of action), intentional infliction of emotional distress (fourth cause of action), prima facie tort (fifth cause of action), retaliatory discharge in violation of Labor Law § 215 (sixth cause of action), wrongful wage deductions and late payment of wages in violation of Labor Law § 191 (3) and § 193 (seventh cause of action), and defamation (eighth cause of action). In support of these causes of action, the complaint sets forth numerous allegedly unfair employment practices in which Johnson engaged, which may be categorized as (1) false inducements to accept employment, including promises of overtime pay, (2) unreasonable demands made upon the plaintiffs, and (3) defamatory statements.

Alleged Employment Inducements

The plaintiffs claim that the tasks assigned to them bore no relation to the job description initially articulated by Johnson. The plaintiffs allege that, when Johnson solicited Epifani, she indicated that the nature of the work consisted of supervising the household staff and general secretarial work. Instead, according to the complaint, Johnson required Epifani to perform "very physical house cleaning work," such as cleaning Johnson's basement and performing "other strenuous tasks." When Johnson solicited Supple, she allegedly represented that the work would consist of supervising the household staff, general secretarial work, and organizing Johnson's financial records. Instead, according to the complaint, Johnson required Supple "to work at very physical house cleaning work," such as cleaning the basement, "work[ing] on her hands and knees steaming carpets and stand[ing] on ladders to hook drapery and change light bulbs on staircases." When Johnson solicited Oliverre, she allegedly represented that the position would consist of doing

household laundry. However, the complaint alleges that Johnson ultimately required Oliverre to "work at all manner of house keeping," and demanded that she stand at all times. According to Oliverre, Johnson would not permit her to sit at any time during the workday, even when the work could be performed sitting down. The plaintiffs assert, in the complaint, that Oliverre had pins in her foot and ankle as a result of a prior injury.

The plaintiffs further allege that, when Johnson solicited them for employment, she represented that she would pay them overtime, but that once the plaintiffs accepted employment, Johnson stated that she would not pay overtime, instead expecting that all of the work she assigned was to be completed regardless of the time it took. Thus, the plaintiffs assert that they were required to work until Johnson deemed that the work assigned was completed, even if this required unpaid overtime. The plaintiffs further claim that Epifani and Supple were required to bring work home in the evening.

Unreasonable Demands

The plaintiffs claim that, while they were employed by Johnson, she placed unreasonable demands on them. As set forth in the complaint, on one Friday evening at 5:00 P.M., Johnson demanded that Supple and Oliverre stay late and haul plywood boards from the floor of the basement to an outside dumpster. The complaint alleges that, when Supple began working for Johnson, Johnson demanded that Supple perform her clerical work on the floor. The plaintiffs further allege that, later, once Supple had a desk at which to work, she found ants on the desk, and that Johnson ordered her to "save the ants so she could look at them." At some point, according to the plaintiffs, Johnson demanded that Oliverre travel to the Johnson home in the Hamptons to prepare it for Johnson's arrival. Johnson allegedly instructed Oliverre to sleep at the house, despite the fact that Oliverre was a single mother and, at the time, her child was sick at home and required her attention. As recounted by the plaintiffs, on another occasion, Johnson demanded that Oliverre come to work despite the fact that she had taken a day off to see a doctor about the injury to her foot and ankle. As a result, Oliverre alleges that she was forced to quit her job in order to keep her appointment with her doctor.

Supple claims that Johnson terminated her employment in violation of Labor Law § 215. Specifically, Supple claims that, in response to her complaint to Johnson that it was a violation of the Labor Law to deny overtime pay to Oliverre and to require

Oliverre to stand if standing was painful to Oliverre, Johnson wrongfully discharged Supple. Supple further claims that, during the course of her employment, Johnson supplied her with petty cash in an amount of not more than $200, which Supple kept in her desk. At some point, $105 was allegedly discovered to be missing, and Johnson allegedly and illegally required Supple to reimburse her for the missing money in violation of Labor Law § 193. Additionally, after Johnson terminated Supple's employment, Johnson allegedly and willfully paid Supple her final wages later than the regular payday for the pay period during which the termination occurred, in violation of Labor Law § 191 (3).

## Defamation

Supple claims that, on or about June 15, 2005, in the presence of Oliverre and another employee named Marita, Johnson stated that Supple had been fired because she had been stealing. According to Supple, Johnson further stated that she had instructed another employee to search Supple's handbag while Johnson distracted Supple, and that the other employee showed Johnson a list of Supple's personal references recovered from Supple's handbag. As alleged in the complaint, Johnson stated, in the presence of Oliverre, that she contacted each of these references and advised them that Supple was "crazy." Supple contends that these words were false and defamatory. She further claims that, as a consequence, she suffered injury to her reputation, as well as pain and mental anguish. Supple argues that, in committing these acts, the defendant acted with malice, oppression, and fraud. She therefore seeks punitive damages.

## The Motion to Dismiss the Complaint

Johnson moved pursuant to CPLR 3211 (a) (1) and (7) to dismiss the complaint. On a motion to dismiss pursuant to CPLR 3211 (a) (7), "the pleading is to be afforded a liberal construction" (*Matter of Casamassima v Casamassima*, 30 AD3d 596, 596 [2006]; *see* CPLR 3026). The reviewing court "accept[s] the facts as alleged in the complaint as true, accord[s] [the] plaintiffs the benefit of every possible favorable inference, and determine[s] only whether the facts as alleged fit within any cognizable legal theory" (*Matter of Casamassima v Casamassima*, 30 AD3d at 596). "A party seeking dismissal on the ground that [his or her] defense is founded on documentary evidence under CPLR 3211 (a) (1) has the burden of submitting documentary evidence that 'resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim' "

(*Sullivan v State of New York*, 34 AD3d 443, 445 [2006], quoting *Nevin v Laclede Professional Prods.*, 273 AD2d 453 [2000]; *see Mazur Bros. Realty, LLC v State of New York*, 59 AD3d 401, 402 [2009]).

## At-Will Employment Relationship as Bar to Inducement Causes of Action

■ The Supreme Court erred in denying those branches of Johnson's motion which were to dismiss the first, second, and third causes of action for failure to state a cause of action. New York's at-will employment rule bars these causes of action.

"New York law is clear that absent 'a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired' " (*Smalley v Dreyfus Corp.*, 10 NY3d 55, 58 [2008], quoting *Murphy v American Home Prods. Corp.*, 58 NY2d 293, 305 [1983]). "Thus, either the employer or the employee generally may terminate the at-will employment for any reason, or for no reason" (*Smalley v Dreyfus Corp.*, 10 NY3d at 58). The Court of Appeals has "repeatedly refused to recognize exceptions to, or pathways around, these principles" (*id.*).

Where a plaintiff is offered only at-will employment, he or she will generally be unable to establish reasonable reliance on a prospective employer's representations, an element necessary to the recovery of damages under theories of fraudulent misrepresentation and negligent misrepresentation (*see Marino v Oakwood Care Ctr.*, 5 AD3d 740, 741 [2004]). Reasonable reliance is also an element necessary to the recovery of damages under a theory of fraudulent inducement (*see Stone v Schulz*, 231 AD2d 707, 708 [1996]). There is no merit to the plaintiffs' claim that, since it is not the termination of employment which is at issue, but the plaintiffs' acceptance of the positions in the first instance, Johnson improperly raised the doctrine of at-will employment in her motion. The at-will employment doctrine has been applied to bar a plaintiff's causes of action under theories of fraudulent misrepresentation and negligent misrepresentation where the circumstances pertained to a plaintiff's acceptance of an offer of a position rather than his or her termination therefrom (*see Marino v Oakwood Care Ctr.*, 5 AD3d 740 [2004]).

## Intentional Infliction of Emotional Distress

■ It is clear that, contrary to Johnson's contention, the fourth cause of action is not, in substance, a wrongful discharge claim, since the plaintiffs claim to have suffered severe

emotional distress as a result of Johnson's alleged extreme and outrageous conduct during the course of their employment. The allegations of the complaint, however, do not describe conduct so outrageous in character, and so extreme in degree, as to state a cause of action to recover damages for intentional infliction of emotional distress.

In this regard, in addition to the allegations set forth above, the fourth cause of action alleges that Johnson used "abusive speech" and insisted upon unreasonable and oppressive work rules. The plaintiffs further allege that she invaded their privacy. Additionally, that cause of action alleges that Johnson forced them to perform unreasonable and humiliating tasks. In other portions of the complaint, the plaintiffs allege that Johnson stated, "When I hire people they are expected to do as they are told or they can go home." According to the complaint, Johnson only permitted the plaintiffs to use the bathroom in the laundry room, which was where Johnson's dogs ate. To use that bathroom, the plaintiffs allegedly were required to step over wet training pads into which the dogs urinated. The plaintiffs allegedly were forbidden from receiving personal telephone calls, even from their children. Additionally, the plaintiffs allegedly were not permitted to speak to each other.

The complaint recites that, when there were guests in the house, the plaintiffs were required to remain in the kitchen or laundry room, and that they were forced to wait in the dark, because Johnson did not permit them to keep lights on in the kitchen. The plaintiffs allegedly were required to stand during the duration of the workday. They allegedly were also not permitted to wear shoes, and were not provided with a break for lunch. On one occasion, Johnson purportedly telephoned Supple "in the middle of the night to ask questions such as why there was no air in her bicycle tires." On another occasion, Johnson reputedly called Oliverre in Brooklyn at 10:00 P.M. and demanded that she come to walk her dogs. When Oliverre objected, stating that she could not leave her two-year-old daughter, Johnson reportedly "demanded that Plaintiff Oliv-[ ]erre bring the little girl and lock her in the dogs' cage while Plaintiff Oliv[ ]erre walked the dogs." On yet another occasion, Johnson allegedly distracted Supple so she could search Supple's personal items, including her handbag. According to the complaint, Johnson justified this action by stating, "This is my house. I can do whatever I want. You have no personal belongings here."

While Johnson's alleged conduct was unquestionably objectionable, accepting the allegations of the complaint as true, they do not allege conduct so outrageous in character, and so extreme in degree, as to state a cause of action to recover damages for intentional infliction of emotional distress (*see Tartaro v Allstate Indem. Co.*, 56 AD3d 758, 759 [2008]; *Leonard v Reinhardt*, 20 AD3d 510, 510-511 [2005]). With respect to what appears to be the most egregious allegation, it should also be noted that, while the plaintiffs claim that Johnson, on one occasion, demanded that Oliverre bring her daughter to Johnson's house and lock her in Johnson's dogs' cage while Oliverre walked the dogs, the complaint does not allege that Oliverre did so, or that Johnson actually forced her to do so.

Since the allegations in the complaint do not allege conduct so outrageous in character, and so extreme in degree, as to state a cause of action to recover damages for intentional infliction of emotional distress, the Supreme Court should have granted that branch of the defendant's motion which was to dismiss the fourth cause of action.

Prima Facie Tort

In connection with the alleged prima facie tort (fifth cause of action), the complaint alleges that Johnson unnecessarily forced Oliverre to stand for the duration of her workday, despite her knowledge that Oliverre had sustained an injury to her foot and ankle. Prima facie tort was designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy, and not to provide a catch-all alternative for every cause of action which is not independently viable (*see Lancaster v Town of E. Hampton*, 54 AD3d 906, 908 [2008]; *Bassim v Hassett*, 184 AD2d 908, 910 [1992]). The elements of a cause of action alleging prima facie tort are: (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or a series of acts which would otherwise be lawful (*see Freihofer v Hearst Corp.*, 65 NY2d 135, 142-143 [1985]; *Curiano v Suozzi*, 63 NY2d 113, 117 [1984]). To make out a claim sounding in prima facie tort, "the plaintiff[ ] [must] allege that disinterested malevolence was the sole motivation for the conduct of which [he or she] complain[s]" (*R.I. Is. House, LLC v North Town Phase II Houses, Inc.*, 51 AD3d 890, 896 [2008]).

While Oliverre alleges that Johnson intentionally inflicted harm upon her without justification, she failed to plead that Johnson's actions were motivated solely by disinterested malev-

olence (*see Lancaster v Town of E. Hampton*, 54 AD3d at 908; *R.I. Is. House, LLC v North Town Phase II Houses, Inc.*, 51 AD3d at 896), or by any other factor.

Additionally, with regard to prima facie tort, "[a] critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages" (*Freihofer v Hearst Corp.*, 65 NY2d at 143). " '[S]uch damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts' " (*Ginsberg v Ginsberg*, 84 AD2d 573, 574 [1981], quoting *Luciano v Handcock*, 78 AD2d 943, 944 [1980]).

Here, Oliverre only alleges that she "suffered special damages, to wit, injury to her foot and ankle, pain, swelling and inability to walk or stand, all in an amount to be prove[d] at time of trial, but in excess of the jurisdictional minimum of this Court." Since these damages are merely general damages for noneconomic loss, Oliverre failed to plead special damages with the required specificity (*see Freihofer v Hearst Corp.*, 65 NY2d at 142-143; *R.I. Is. House, LLC v North Town Phase II Houses, Inc.*, 51 AD3d at 896; *Stanton v Carrara*, 28 AD3d 642, 642 [2006]). Accordingly, the Supreme Court should have granted that branch of Johnson's motion which was to dismiss the fifth cause of action for failure to state a cause of action.

Defamation

"The elements of a cause of action [to recover damages] for defamation are a 'false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se' " (*Salvatore v Kumar*, 45 AD3d 560, 563 [2007], quoting *Dillon v City of New York*, 261 AD2d 34, 38 [1999]). The complaint must set forth the particular words allegedly constituting defamation (*see* CPLR 3016 [a]), and it must also allege the time when, place where, and manner in which the false statement was made, and specify to whom it was made (*see Dillon v City of New York*, 261 AD2d at 38).

"Generally, a plaintiff alleging slander must plead and prove that he or she has sustained special damages, i.e., 'the loss of something having economic or pecuniary value' " (*Rufeh v Schwartz*, 50 AD3d 1002, 1003 [2008], quoting *Liberman v Gelstein*, 80 NY2d 429, 434-435 [1992]). "A plaintiff need not prove special damages, however, if he or she can establish that the alleged defamatory statement constituted slander per se"

(*Rufeh v Schwartz*, 50 AD3d at 1003). The four exceptions which constitute "slander per se" are statements (1) charging plaintiff with a serious crime; (2) that tend to injure another in his or her trade, business or profession; (3) that plaintiff has a loathsome disease; or (4) imputing unchastity to a woman (*see Liberman v Gelstein*, 80 NY2d at 435). When statements fall within one of these categories, the law presumes that damages will result, and they need not be alleged or proven (*id.*).

Johnson, in addressing the defamation cause of action, appears to claim, in effect, that her alleged statement to Supple's references that Supple was "crazy" is the only statement at issue. However, in addition to this purported statement, Supple alleges that Johnson stated, to Oliverre and another employee named Marita, that Supple's employment with her was being terminated because she was stealing.

█ The complaint alleges that the statement that Supple was terminated because she was stealing from Johnson was made on or about June 15, 2005, sets forth the statement allegedly made, and that it was made to Oliverre and Marita. Accordingly, these allegations satisfied the pleading requirements of CPLR 3016, inasmuch as it alleged the time when, place where, and manner in which the false statement was made, and specified to whom it was made (*see generally Dillon v City of New York*, 261 AD2d at 38).

With regard to damages, the complaint only alleges that Supple "has been injured in her good name and reputation, has suffered great pain and mental anguish, and has otherwise been damaged in all to her damage [*sic*] in a sum to be proven at the time of trial according to proof." This assertion fails to allege special damages with sufficient particularity. However, if the allegedly defamatory statement qualifies as slander per se, the failure to plead special damages with particularity will not be fatal.

As to the alleged statement that Supple was stealing from Johnson, this constitutes an allegation of a "serious crime" so as to qualify as slander per se (*see Liberman v Gelstein*, 80 NY2d at 435 [discussing the distinction between serious and nonserious crimes for qualification as slander per se, and citing the Restatement [Second] of Torts § 571, Comment *g*, which lists crimes actionable as per se slander, including, inter alia, larceny]). Further, this alleged statement would clearly constitute one of fact rather than the privileged expression of an opinion (*see Mann v Abel*, 10 NY3d 271, 276 [2008] [expressions

of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action to recover damages for defamation]).

With regard to Johnson's alleged statement describing Supple as "crazy," the complaint only alleges that the defamation occurred when Johnson made this remark generally to Supple's "references," and thus failed to identify, with necessary specificity, the person or persons to whom the statements were made (*see Dillon v City of New York*, 261 AD2d at 38), resulting in an insufficiently pleaded cause of action. Moreover, Johnson's remark to Oliverre allegedly characterizing Supple as "crazy" does not appear to be a defamatory statement concerning Supple; Johnson did not tell Oliverre that she believed that Supple was "crazy," but only that she telephoned Supple's references and told them that Supple was "crazy." To the extent that the Court may infer that the substance of the statement was Johnson's assertion that Supple was "crazy," this would appear to be a hyperbolic expression of opinion and, thus, nonactionable (*see generally Mann v Abel*, 10 NY3d at 276).

Since, however, Johnson's alleged statement that Supple's employment was being terminated because Supple was stealing was sufficiently pleaded, and constituted slander per se, the Supreme Court properly denied that branch of Johnson's motion which was to dismiss so much of the eighth cause of action as was premised on this allegedly defamatory statement.

Labor Law § 215

"Labor Law § 215 prohibits discharging an employee in retaliation for making a complaint that the employer 'has violated any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter' " (*Kelly v Xerox Corp.*, 256 AD2d 311, 312 [1998], quoting Labor Law § 215 [1]). " '[T]his chapter' refers to any provision of the Labor Law" (*Kelly v Xerox Corp.*, 256 AD2d at 312).

The sixth cause of action alleges that Supple complained to Johnson that the denial of overtime pay to Oliverre and the infliction of pain upon Oliverre as a consequence of Johnson's directive that Oliverre stand during the workday violated "the laws of the State of New York," but the complaint does not allege that Johnson's conduct in this regard violated any provision of the Labor Law. The sixth cause of action further alleges that, as a direct result of Supple's complaint to Johnson, the latter wrongfully discharged Supple in violation of Labor Law § 215.

■ Johnson argues that Supple was required to identify the specific sections of the Labor Law which Johnson allegedly violated. For this proposition, she cites an unreported 2004 case from the United States District Court for the Eastern District of New York (*see Nicholls v Brookdale Univ. Hosp. Med. Ctr.*, 2004 WL 1533831,*5, 2004 US Dist LEXIS 12816, *12-13 [ED NY 2004]). Of course, this case is not binding on this Court. Additionally, the court in that case stated only that it "cannot determine what alleged violation of New York's Labor Law triggered plaintiff's claim under section 215" (2004 WL 1533831,*5, 2004 US Dist LEXIS 12816, *13). We nonetheless hold that a plaintiff must allege that he or she complained about a specific violation of the Labor Law to support a claim of retaliatory discharge pursuant to Labor Law § 215 (*see Murphy v American Home Prods. Corp.*, 58 NY2d at 302 n 1; *Kelly v Xerox Corp.*, 256 AD2d at 312).

"[T]he Labor Law does not contain any provisions governing overtime compensation" (*Deshpande v TJH Med. Servs., P.C.*, 52 AD3d 648, 651 [2008]; *see Ballard v Community Home Care Referral Serv.*, 264 AD2d 747 [1999]). Since, as previously stated, the term "this chapter," as used in Labor Law § 215, "refers to any provision of the Labor Law" (*Kelly v Xerox Corp.*, 256 AD2d at 312), so much of the sixth cause of action as is premised upon complaints pertaining to Johnson's failure to pay Oliverre for overtime cannot support a cause of action pursuant to Labor Law § 215.

With regard to Supple's alleged complaints to Johnson respecting Oliverre's injuries and physical limitations, it is not clear that these complaints pertained to any section of the Labor Law. Accordingly, to the extent that the sixth cause of action is premised on allegations pertaining to complaints about Johnson's disregard of Oliverre's physical limitations, the plaintiffs' claim cannot support her recovery pursuant to Labor Law § 215.

Based on the foregoing, the Supreme Court should have granted that branch of Johnson's motion which was to dismiss the sixth cause of action.

Labor Law § 193

"Labor Law § 193 prohibits employers from making any deductions from wages, except as required by law or regulation, or authorized by the employee for the employee's benefit" (*Matter of Hudacs v Frito-Lay, Inc.*, 90 NY2d 342, 346-347 [1997]). Repayments by separate transaction are also forbidden (*id.* at 348; *see* Labor Law § 193 [2]). However, as the Court of Appeals

observed, the term "any payment," as used in Labor Law § 193, "is actually meant to refer only to payments from wages" (*Matter of Hudacs v Frito-Lay, Inc.*, 90 NY2d at 348). In *Matter of Hudacs,* the Court of Appeals concluded that the payments at issue "are not in any sense charges or deductions from wages; rather, these payments merely represent full remittance of company funds temporarily entrusted to the employee's control, which the company has every right to expect will be fully remitted" (*id.*). The payments at issue in that case required Frito-Lay's route salespeople to remit moneys collected from customers upon delivery of inventory (*id.* at 344). The Court of Appeals specifically held that "Frito-Lay, Inc. did not violate Labor Law § 193, which prohibits an employer from making unauthorized deductions from wages, when it required its route salespeople to remit moneys collected from customers upon delivery of inventory, since these repayments to the company were unrelated to and independent from the payment of wages" (*id.*).

■ Here, Supple alleges that Johnson entrusted her with the sum of $200 in petty cash, and that, when $105 of that money went missing, Johnson demanded that Supple reimburse her for it. Johnson is correct that the payment she allegedly demanded, properly or improperly, was unrelated to and independent from the payment of wages (*id.*). Johnson is also correct in claiming that this payment "merely represent[ed] full remittance of [the defendant employer's] funds temporarily entrusted to the employee[ ] [Supple's] control, which the [defendant] ha[d] every right to expect [would] be fully remitted" (*id.* at 348). Therefore, Labor Law § 193 is inapplicable to these circumstances. Accordingly, the Supreme Court should have granted that branch of the defendant's motion which was to dismiss so much of the seventh cause of action as alleged a violation of Labor Law § 193.

Labor Law § 191

In the seventh cause of action, the plaintiffs claim that Johnson "willfully paid . . . Supple her final wages later than the regular payday for the pay period during which the termination occurred" in violation of Labor Law § 191 (3). As Johnson avers in her affidavit, the record contains a copy of what purports to be Supple's final paycheck, dated June 23, 2005. As Johnson also observes, the plaintiffs allege in the complaint that Supple's last day of work was June 13, 2005, 10 days prior to the date on the final paycheck. Johnson also relies on a letter to Supple confirming the terms of her employment, which recites, inter alia, that Supple was to be paid biweekly. However,

this letter is not signed by any party. It should also be noted that, in connection with a branch of her motion which was to dismiss one of the other causes of action, Johnson relies upon a letter from her to Supple dated June 29, 2005, 16 days after Supple's alleged termination. This letter, too, is not signed. It states, inter alia, that a check is enclosed for wages.

Labor Law § 191 provides, in part, "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section" (Labor Law § 191 [3]). That section also provides that "[a] clerical and other worker," such as Supple (see Labor Law § 190 [7]), "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer" (Labor Law § 191 [1] [d]).

It is not entirely clear, based on the documentary evidence, that Supple was timely paid. The purported agreement indicating that she would be paid biweekly was not signed by any party. Moreover, even if Supple were given her final pay on the date appearing on the check, and paid biweekly, this would establish only that she was paid within 10 days of her termination, not necessarily that she was paid "not later than the regular pay day for the pay period during which the termination occurred" (Labor Law § 191 [3]). In this regard, it is possible that the regular pay day for the pay period during which Supple was terminated may have been the day following her termination. Moreover, the unsigned letter referred to above, dated June 29, 2005, and thus 16 days after the termination of Supple's employment, which indicated that a check for wages was enclosed, undermines Johnson's contention.

Johnson argued before the Supreme Court that Supple's claim that she was not timely paid was refuted by documentary evidence, which, according to Johnson, established that Supple "received and deposited her final paycheck in accordance with the usual manner in which she had received her paycheck." We reject Johnson's argument.

■ The documents submitted by Johnson in support of that branch of her motion which was pursuant to CPLR 3211 (a) (1) to dismiss so much of the seventh cause of action as alleged a violation of Labor Law § 191 (3) make clear that Johnson's defense to Supple's claim pursuant to Labor Law § 191 (3) is "not conclusively determinable without reference to" the course

of dealing between Johnson and Supple that established which day was Supple's regular payday (*Sullivan v State of New York*, 34 AD3d at 445).

Accordingly, the Supreme Court correctly denied that branch of Johnson's motion which was pursuant to CPLR 3211 (a) (1) to dismiss so much of the seventh cause of action as alleged a violation of Labor Law § 191 (3) (*see AHA Sales, Inc. v Creative Bath Prods., Inc.*, 58 AD3d 6, 16-17 [2008]; *Bynog v Cipriani Group*, 298 AD2d 164 [2002], *mod other grounds* 1 NY3d 193 [2003]).

Johnson's remaining contentions need not be reached in light of our determination.

Conclusion

In light of the foregoing, the order is modified, on the law, by deleting the provisions thereof denying those branches of the defendant's motion which were pursuant to CPLR 3211 (a) (7) to dismiss the first, second, third, fourth, fifth, and sixth causes of action, so much of the seventh cause of action as alleged a violation of Labor Law § 193, and so much of the eighth cause of action as was premised upon Johnson's alleged statement that Supple was "crazy" and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed.

MASTRO, J.P., COVELLO and LEVENTHAL, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof denying those branches of the defendant's motion which were pursuant to CPLR 3211 (a) (7) to dismiss the first, second, third, fourth, fifth, and sixth causes of action, so much of the seventh cause of action as alleged a violation of Labor Law § 193, and so much of the eighth cause of action as was premised upon the defendant's alleged statement that the plaintiff Kelly Supple was "crazy" and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed, with costs to the defendant.