OPINION OF THE COURT
David M. Barry, J.
Plaintiffs Daniel P Varrenti, Brian Winant, Adam Mesiti, and Stephen Mesiti (plaintiffs) have brought separate applications by order to show cause for an order: (1) enjoining defendants from continuing to post the printed statements as set forth in the complaints; and (2) ordering the defendant Gannett Co., Inc., doing business as Democrat & Chronicle (Gannett), to provide the names, addresses, and identities and/or any relevant pedigree information for the four John/Jane Doe defendants “Taxcut,” “brockportonian,” “BkptStar,” and “TaxpayerBWare.”
According to the complaints, plaintiff Daniel P Varrenti is the Chief of Police for the Village of Brockport Police Department (Department), plaintiff Brian Winant is an officer for the Department and current Union President, plaintiff Adam Mesiti is a sergeant for the Department, and plaintiff Stephen Mesiti is an officer for the Department. Defendant Gannett publishes the “Democrat & Chronicle,” a daily newspaper that is distributed throughout the greater Rochester, New York region. The newspaper also has a Web site, http:// www.democratandchronicle.com, which posts articles from the print edition on the Web site. Users of the Web site are allowed to post comments on those articles. The plaintiffs allege that the four John/Jane Doe defendants defamed them when the Doe defendants posted various comments on the Democrat & Chronicle Web site in relation to two articles that were posted on the Web site in January 2011.
*407 At the outset, the court notes that counsel for plaintiffs and defendant Gannett agree that plaintiffs’ request for an order enjoining defendants from continuing to post the printed statements as set forth in the complaints has been rendered moot because the comments related to the articles are no longer available for viewing. Thus, the only issue for this court to decide is whether to order defendant Gannett to provide any identifying information regarding the four anonymous John/Jane Doe defendants.
Plaintiffs’ complaints allege that the four John/Jane Doe defendants made the alleged defamatory statements between January 17, 2011 and January 20, 2011 in response to two articles that were posted on Democrat & Chronicle’s Web site. Regarding the first article, “Brockport, Sweden and Clarkson Feud Over Fire, Ambulance Services,” plaintiffs assert that defendant John/Jane Doe No. 1, also known as “Taxcut,” posted the following series of comments on January 17, 2011 and January 18, 2011:
“Mr. Loon,
“Tom MudGun is Tom MudGun by any other name, and he smells as foul as the venom he dispenses.
“Now. According to Mr. Varrenti, we had almost
16.000 calls for service in Brockport. We have about
8.000 residents.
“That’s 2 calls per resident. Have you made your call today?
“Chief V counts as a call for service every time an officer touches a doorknob, every call received for any reason, and I believe every time an officer waves at you. My!
“Crime has sure soared in Broke-port since Mr. V was hired.
“Mr. V has a 10 year, million dollar contract with Broke-port. He has found the pot of gold at the end of the rainbow. Just call him ‘The Million Dollar Dan’
“Mr. Namro (Broke-port) policeman,
“Regarding backup, you know the Sheriffs AND the University police always come in to support Brock-port officers. We don’t need always 2 Brockport cops on the beat. The university is off in the summer; we don’t need 3-4 officers for weekends.
*408 “Broke-port is LESS than 2 square miles, (university have their own police)
“Regarding the competence of Broke-port’s 100K a year cops, consider the following,
“• Broke-port cops don’t stop for pedestrians.
“• Officer Masseti broke into a home thru a basement window (without a warrant) and arrested the residents. The case was thrown out of court, and no discipline given to officer. Why?
“• Officers beat up a deaf kid because he could not hear their commands. Could that be a liability?
“ ‘The Million Dollar Dan’ could reign in over time, but he has a sweet heart deal with the cops. They both look the other way and ignore their mutual misdeeds.
“Barnie Fife comes to mind? Broke-port cops are a liability!
“Mr. 100K/year plus benefits Broke-port policeman, “So you think its ok for Messiti to break into village’s homes without a warrant?
“Its ok for Broke-port cops to beat up a deaf kid because he could not hear their orders?
“It’s ok for Chief V. with his illegal 10 year, million-dollar contract, (the Million Dollar Dan) to inflate calls for service to justify the existence of the BPD? “Its ok for ‘the Million Dollar Dan’ to let his cops rake taxpayers over the coals with overtime?
“We don’t need cops who harass and intimidate taxpayers who complain about the high cost, and we don’t want them to manipulate elections so they can control the village board.
“Mr. Tom MudGun,
“Please stop paddling your nauseating blogg here. You are NOT a reporter. Yours are just heavily biased opinions.
“You have allowed violent comments in your blogg that threatened the mayor’s life.
“Mr. Markam allowed in his blogg threats to the homes of the 2 towns supervisors.
“Your vile opinions make any decent person’s stomach ill.
“An investigation is necessary into the questionable over time practices allowed by Mr. V ‘The Million *409 Dollar Dan’, intimidation by the BPD against a group of residents. Illegal election interference by the BPD, a coup against the mayor orchestrated by Mr. V etc.”
In response to the second article, “Municipalities Discuss Forming Fire District,” plaintiffs allege that John/Jane Doe No. 3, also known as “BkptStar,” wrote the following comment on January 20, 2011:
“Dear Loone,
“If BPD is the best in the county, we are all in real trouble. They are sure not the cheapest.
“Tell me, why is Varrenti using the 3 trustees he controls to try to undermine and unseat the Mayor?
“Why ‘The Million Dollar Dan’ did not discipline officer Massetti for breaking into a home thru a basement window, and wrongly arresting the residents?
In fact, in a board meeting, Varrenti complained about the judge for throwing the case out of court!
“Why Varrenti didn’t discipline the officers that beat up a deaf kid because he could not hear their commands?
“Why is Varrenti allowing his cops to rake in all the overtime they want?
“I think an investigation is in order.
“The bottom line, Broke-port cops are just too greedy and expensive. The 3 blind mice must remember they are working for the taxpayers, not for the cops.”
In addition, plaintiffs assert that John/Jane Doe No. 2, also known as “brockportonian,” and John/Jane Doe No. 4, also known as “TaxpayerBWare,” wrote the following series of comments on January 20, 2011 in response to the second article, “Municipalities Discuss Forming Fire District”:
‘ ‘brockportonian:
“Mesiti is the least of the ones there to worry about. Someone should check into the cover ups, yes plural, of trouble the current union president got into.
And, I wonder how much money was donated to the campaigns of the three blind mice by Broke-port police officers. THAT would be interesting to find out.
It would definitely show allegiance.”
“TaxpayerBWare:
*410 “Replying to brockportonian: Regarding cover ups and the current union president, Brian Winant, are you referring to marijuana? Evidently the investigation will turn up more than the hours that they actually work. We keep hearing about all the overtime worked. I understand that their time sheets will be available to the public soon. If there are more cover ups regarding the corruption that has been allowed by the chi[e]f, million dollar dan, laughing all the way to the bank, I can’t wait.”
‘ ‘brockportonian:
“No, I am not talking about marijuana; that would be the least of their worries. Maybe the MCSO deputies who had to deal with the problem child would cooperate if forced through an investigation. What a . shame, Brockport’s good cop gone bad; hiding behind the badge. I feel sorry for the reputation he is giving all the other officers. I am sure they aren’t like him. He sure puts on a good show.”
Analysis
It is well settled that the First Amendment protects anonymous speech. (Buckley v American Constitutional Law Foundation, Inc., 525 US 182, 200 [1999].) However, defamatory speech, whether anonymous or from identifiable sources, is not protected by the First Amendment. While the U.S. Supreme Court has recognized that the First Amendment’s protection of free speech extends to the Internet (Reno v American Civ. Liberties Union, 521 US 844, 870 [1997]), neither the U.S. Supreme Court nor the Appellate Courts of New York have announced a controlling standard for determining when to disclose an anonymous Internet party’s identity.
Defendant Gannett urges this court to adopt the four part test as set forth in Dendrite Intl., Inc. v Doe No. 3 (775 A2d 756 [NJ Super Ct, App Div 2001]), while the plaintiffs suggest that this court adopt the five part test in Sony Music Entertainment Inc. v Does 1-40 (326 F Supp 2d 556 [SD NY 2004]). Both the Dendrite and Sony cases involve whether an Internet service provider had to comply with a plaintiffs subpoena and identify the anonymous Internet users. In addition, both the Dendrite and Sony decisions required the plaintiff, as one of the elements of the enumerated multipart tests, to set forth a prima facie cause of action against the fictitiously-named anonymous defendants.
*411 Here, plaintiffs do not cite to any legal authority in support of the relief requested in their orders to show cause and complaints,* and have not served any subpoenas to compel Gannett to provide the names, addresses, and identities and/or any relevant pedigree information for the four John/Jane Doe defendants, “Taxcut,” “brockportonian,” “BkptStar,” and “TaxpayerBWare.” Nor did plaintiffs commence a proceeding for preaction disclosure pursuant to CPLR 3102 (c), where a petitioner must demonstrate, inter alia, that it has a meritorious cause of action. (Sandals Resorts Intl. Ltd. v Google, Inc., 86 AD3d 32, 38 [1st Dept 2011].) Rather, plaintiffs just demand that the “equitable relief requested” be granted.
Regardless, it is not necessary for the court to decide whether the Dendrite or Sony test should be applied, or whether plaintiffs’ applications should be converted to a proceeding for pre-action disclosure pursuant to CPLR 3102 (c), because the common factor that this court must decide in all three situations is whether plaintiffs have stated a prima facie cause of action for defamation.
The elements of a cause of action for defamation are “a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se.” {Dillon v City of New York, 261 AD2d 34, 38 [1st Dept 1999].) “The complaint must set forth the particular words allegedly constituting defamation {see CPLR 3016 [a]), and it must also allege the time when, place where, and manner in which the false statement was made, and specify to whom it was made.” {Epifani v Johnson, 65 AD3d 224, 233 [2d Dept 2009].) As public officials, the plaintiffs here must also prove that the asserted defamatory statements were made “with ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.” {New York Times Co. v Sullivan, 376 US 254, 280 [1964]; Orr v Lynch, 60 AD2d 949, 950 [3d Dept 1978], affd 45 NY2d 903 [1978].)
However, “[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation.” {Mann v Abel, 10 NY3d 271, 276 [2008], cert denied 555 US 1170 [2009].) *412 Whether a particular statement constitutes an opinion or an objective fact is a question of law for the court to decide. (Id.) To distinguish between opinion and fact, courts should consider various factors, including
“(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.” (Id., quoting Brian v Richardson, 87 NY2d 46, 51 [1995].)
The third factor, context, is a significant part of the analysis. (See Brian, 87 NY2d at 51-53; Immuno AG. v Moor-Jankowski, 77 NY2d 235, 254-255 [1991], cert denied 500 US 954 [1991]; Mann, 10 NY3d at 276-277.) “In distinguishing between actionable factual assertions and nonactionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose.” (Brian, 87 NY2d at 51; Mann, 10 NY3d at 277.) Instead of
“sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis ‘whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.’ ” (Brian, 87 NY2d at 51, quoting Immuno AG., 77 NY2d at 254.)
Here, the court concludes that based on the overall context in which the alleged defamatory statements were made, a reasonable reader would conclude that the statements were the opinions of the anonymous John/Jane Doe defendants. The anonymous comments expressed opinions that the Village of Brockport Police Department was not properly serving the citizens of Brockport. The tone of the comments was sarcastic, hyperbolic, and based on rumors that the anonymous posters heard around the Village of Brockport and about the Department. Moreover, the apparent purpose of the comments made by the John/Jane Doe defendants was to call for an investigation into the Department’s practices.
“In addition to considering the immediate context in which the disputed words appear, the courts are required to take into *413 consideration the larger context in which the statements were published, including the nature of the particular forum.” {Brian, 87 NY2d at 51.) Here, the forum itself is inviting readers to comment on the articles posted on the Democrat & Chronicle’s Web site, and the readers are expected to give their opinions in the comments section of the on-line article. As the Appellate Division, First Department, observed, the culture of Internet communications, as distinct from print media such as newspapers and magazines, has been characterized as encouraging a “freewheeling, anything-goes writing style.” {Sandals Resorts Intl. Ltd., 86 AD3d at 43.)
 Given this contextual background, the court finds that the comments posted by the four John/Jane Doe defendants on the Democrat & Chronicle’s Web site constitute expressions of protected opinion, and because opinions cannot form the basis of a defamation claim, defendant Gannett is not required to unmask the identities of the four anonymous Internet commentators. Therefore, plaintiffs’ applications by order to show cause for an order compelling defendant Gannett to provide the names, addresses, and identities and/or any relevant pedigree information for the four John/Jane Doe defendants “Taxcut,” “brockportonian,” “BkptStar,” and ‘6TaxpayerBWare’ ’ are hereby denied.

 Plaintiff Daniel Varrenti verified his complaint, but the complaint brought by plaintiffs Brian Winant, Adam Mesiti, and Stephen Mesiti is not verified.