Roman, J.,
concurs in part and dissents in part, and votes to affirm the order insofar as appealed from, with the following memorandum: I respectfully disagree with the majority’s conclu *825 sion that the amended complaint states a cause of action to recover damages for slander per se based upon a statement allegedly imputing unchastity to the plaintiff. The allegedly defamatory statement, which was made by the defendant to the then-13-year-old plaintiffs grandmother and school officials, revealed that the plaintiff was being sexually abused by her father. As will be discussed in greater detail, unchastity cannot be imputed to a female as a result of intercourse involving the crimes of rape and incest. The allegedly defamatory statement thus does not qualify as slander per se, and the plaintiff has not pleaded special damages. Therefore, the defamation claim must be dismissed for failure to state a cause of action.
The amended complaint in this case alleged, in pertinent part, that in March 2005 the defendant, “representing herself to be a representative of or in some way working with the Kiryas Joel Union Free School District. . . and/or the Beth Rachel School,” placed a telephone call to the then-13-year-old plaintiffs grandmother, R.L. During this phone call, the defendant allegedly “recklessly, maliciously and with flagrant disregard for the truth, disseminated to [R.L.] the false, slanderous and defamatory allegation” that the plaintiff “had sexual intercourse with her father.” The affidavit of the plaintiffs grandmother, and the order appealed from, indicate that the plaintiffs father allegedly confessed in June 2005 that he had sexual intercourse with the plaintiff, although he subsequently retracted his confession. The amended complaint alleged that “one of the fundamental principles” within the plaintiffs community “is the strict mandate that women and girls must remain chaste until they are married,” and that “allegations that an unmarried infant girl . . . had lost her virginity prior to marriage” would cause “irreparable damage to the young girl’s reputation and standing in the community.” The amended complaint alleged that the statement at issue constituted slander per se. In addition, it was asserted, “[u]pon information and belief,” that the defendant repeated the alleged statement “to other persons, including officials of the School District and Beth Rachel School,” causing “disgrace, humiliation, disrespect and extraordinary irreparable damage to Plaintiff’s reputation and standing in the community.”
“Defamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace” (Town of Massena v Healthcare Underwriters Mut. Ins. Co., 98 NY2d 435, 444 [2002]; see Thomas H. v Paul B., 18 NY3d 580, 584 [2012]). “Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance. *826 The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader [or listener], and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction” (Aronson v Wiersma, 65 NY2d 592, 593-594 [1985] [citations omitted]; see James v Gannett Co., 40 NY2d 415, 419-420 [1976]; Wilcox v Newark Val. Cent. School Dist., 74 AD3d 1558, 1560-1561 [2010]; Allen v CH Energy Group, Inc., 58 AD3d 1102, 1103 [2009]).
“[A] plaintiff alleging slander must plead and prove that he or she has sustained special damages, i.e., ‘the loss of something having economic or pecuniary value,’ ” unless the defamatory statement falls into one of the categories of slander per se (Rufeh v Schwartz, 50 AD3d 1002, 1004 [2008], quoting Liberman v Gelstein, 80 NY2d 429, 434-435 [1992]; see Epifani v Johnson, 65 AD3d 224, 234 [2009]). Among the recognized categories of slander per se, and the only one at issue here, are statements imputing unchastity to a woman (see Liberman v Gelstein, 80 NY2d at 435; Epifani v Johnson, 65 AD3d at 234).
Here, accepting the facts alleged in the amended complaint as true, and according the plaintiff the benefit of every favorable inference as required on a motion to dismiss pursuant to CPLR 3211 (a) (7) (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]), I conclude that the amended complaint fails to state a cause of action to recover damages for slander per se.
The alleged statement, that the plaintiff “had sexual intercourse with her father,” was allegedly made by a representative of the plaintiff’s school district to school officials and the plaintiff’s paternal grandmother, R.L., in a private telephone conversation. No reasonable listener could have understood the statement to impute unchastity in the context in which the words were spoken (see Aronson v Wiersma, 65 NY2d at 594; see generally Qureshi v St. Barnabas Hosp. Ctr., 430 F Supp 2d 279, 288 [SD NY 2006]). Indeed, the alleged defamatory statement revealed that the then-13-year-old plaintiff had been the victim of the crimes of rape and incest by the child’s father (see Penal Law §§ 130.30 [1]; 255.26). The legal definition of “chaste,” as provided by Black’s Law Dictionary, is stated in toto as “[n]ever voluntarily having had unlawful sexual intercourse” (Black’s Law Dictionary 236 [6th ed 1990] [emphasis added]). Moreover, “chastity” is defined as the “[q]uality or state of being chaste” (id.). Unchastity may be imputed from statements alleging prostitution, promiscuity, or voluntary sexual behavior (see e.g. Walia v Vivek Purmasir & Assoc., Inc., 160 F Supp 2d 380, 394- *827 395 [ED NY 2000]; cf. James v Gannett Co, 40 NY2d at 420; Bement v N.Y.P. Holdings, 307 AD2d 86, 92 [2003]; but see Rozanski v Fitch, 134 AD2d 944, 946 [1987]). However, unchastity cannot be imputed to a woman as a result of having been the victim of a sex crime (see Snyder v Lamb, 2003 WL 1194903, *14, 2003 Cal App Unpub LEXIS 2558, *46 [Ct App 2003] [“A victim of a sex crime is not considered unchaste”], citing Rocky Mtn. News Print. Co. v Fridborn, 46 Colo 440, 450, 104 P 956, 960 [1909] [“An unmarried female . . . who has been carnally known against her will, and as a result thereof becomes a mother, has not thereby lost her virtue, nor her chastity”]; cf. Lemacks v State of Georgia, 207 Ga App 160, 161, 427 SE2d 536, 537 [1993] [“It is no reflection on character that one has been an unwilling victim of prior crimes”]; Summitt v State of Nevada, 101 Nev 159, 164, 697 P2d 1374, 1378 [1985, Steffen, J., concurring in part and dissenting in part] [finding that the child-victim’s reputation would have been unaffected by a disclosure that she had been the victim of a prior sexual assault]). Here, since the plaintiff was under the age of 17, she was incapable, as a matter of law, of consenting to sexual contact (see Penal Law § 130.05 [3] [a]; Matter of Jessie C., 164 AD2d 731, 735 [1991]).
Contrary to the majority’s conclusion, the alleged statement is not reasonably susceptible of a defamatory connotation, as the plaintiff was allegedly the victim of a sex crime. In fact, as noted by the motion court, if the statement was defamatory to any person, it was solely defamatory to the plaintiffs father as the alleged perpetrator of the sexual abuse (see Cruz v Latin News Impacto Newspaper, 216 AD2d 50, 52 [1995] [“Plaintiffs claim that the statement, attributed to her, that her husband infected her as the result of patronizing prostitutes was defamatory, could be defamatory as to him, not her” (emphasis omitted)]; see also Sarwer v Conde Nast Pubis., 237 AD2d 191, 191 [1997] [statements published in the defendants’ magazine, Vanity Fair, in 1989, if referable to the plaintiff, were not susceptible of a defamatory connotation: “the effect of the article as a whole being to leave the reader with only sympathy for plaintiff as a victim of child abuse”]).
Although in Katapodis v Brooklyn Spectator, Inc. (287 NY 17 [1941]), the Court of Appeals held that a statement may be defamatory if it portrays the plaintiff as an object of pity, unlike the present case, Katapodis involved libel, and not the specific categories of slander per se (id. [addressing whether a written publication from 1940 referencing the plaintiffs dire financial situation constituted libel]). Since the alleged statement did not impute unchastity to the plaintiff, and therefore, does not fall *828 within a category of slander per se, the statement is not actionable in the absence of an allegation of special damages, regardless of whether the statement exposed the plaintiff to contempt and ridicule, or portrayed her as an object of pity (see Liberman v Gelstein, 80 NY2d at 435-436; Klein v McGauley, 29 AD2d 418, 421 [1968] [“Contrary to the law of libel, the spoken word which results only in the victim being held up to ridicule and contempt is never actionable in a slander suit without proof of special damage, unless it falls within one of several clearly defined categories”]; Brzezinski v Tri-State Publ. Printing & Fulfillment, Inc., 2008 NY Slip Op 32754[U], *4 [Sup Ct, Suffolk County 2008] [“Any false publication by writing which exposes one to ridicule, hatred, contempt or obloquy, or causes him to be shunned or avoided, is libel per se, though if spoken it may be no slander. The definition of slander per se is not general, like that of libel, but is restricted and specific”]).
To find that the alleged statement is susceptible of the defamatory connotation that the plaintiff is unchaste could have a chilling effect on the reporting of suspected cases of child abuse (cf. Dombrowski v Bulson, 19 NY3d 347, 352 [2012] [expressing concern with the chilling effect of a ruling permitting the recovery of nonpecuniary damages for legal malpractice in a criminal case affecting the willingness of the defense bar to represent indigent defendants]). Such a result would run contrary to “New York’s explicit and compelling public policy to protect children from the harmful conduct of adults” (Matter of Binghamton City School Dist. [Peacock], 33 AD3d 1074, 1076 [2006]). Indeed, New York requires certain persons, including school officials, to report cases of suspected child sexual abuse, and provides those persons with qualified immunity from civil liability in connection with such reports made in good faith (see Social Services Law §§ 413, 419; Mark G. v Sabol, 93 NY2d 710, 721 [1999]; Matter of Kimberly S.M. v Bradford Cent. School, 226 AD2d 85, 88 [1996]; see also Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 60 [1959], quoting Bingham v Gaynor, 203 NY 27, 31 [1911] [the qualified privilege “ ‘grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person’ ”]; Silverman v Clark, 35 AD3d 1, 11 [2006]). This information may assist law enforcement officials in investigating and prosecuting child abuse cases (cf. People v Gearhart, 148 Misc 2d 249, 254 [1990]).
The importance attached to the reporting of child abuse is *829 critical, given that “[c]hild abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim” (Pennsylvania v Ritchie, 480 US 39, 60 [1987]; see Matter of Philip M., 82 NY2d 238, 243 [1993]). Moreover, the sexual abuse of children in family settings “is difficult to detect because the acts are predominantly nonviolent and usually occur in secret rendering the child the only witness” (Matter of Nicole V., 71 NY2d 112, 117 [1987]). “A child’s feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent” (Pennsylvania v Ritchie, 480 US at 60). Therefore, it is essential that people be encouraged to report suspected cases of child sexual abuse (see Pearson v Miller, 211 F3d 57, 70-71 [3d Cir 2000]), without the fear of being subjected to litigation (see Gross v Haight, 496 So 2d 1225, 1228 [La Ct App 1986] [“It would be most unfortunate if the threat of defamation claims should cast a chilling effect upon the willingness of persons to report suspected cases (of child abuse), where reasonable cause for suspicion exists”]).
Accordingly, based on the foregoing, I find that the amended complaint fails to state a cause of action to recover damages for slander per se, and would affirm the order insofar as appealed from.