■ Darci Williams, Respondent, v Varig Brazilian Airlines et al., Appellants.—Order, Supreme Court, New York County (David H. Edwards, Jr., J.), entered on December 12, 1989, which denied defendants' motion for summary judgment pursuant to CPLR 3212 dismissing the fifth and sixth causes of action in plaintiff's second amended complaint, is unanimously reversed on the law and the motion granted, with costs and disbursements.

Defendants herein, Varig Brazilian Airlines and Boris Silitschanu, appeal from an order of the Supreme Court which denied their motion for summary judgment dismissing the

fifth and sixth causes of action for slander and libel, respectively, the only claims still remaining in plaintiff's amended complaint. In that regard, plaintiff instituted this action as the result of her termination by Varig from the position of Senior Payroll Clerk. Defendant Silitschanu, a Varig employee since 1959, was appointed Industrial Relations Manager in January of 1974, in which capacity he was responsible for the Personnel Department, including payroll. It is alleged that prior to being fired in May of 1978, plaintiff was subjected to public censure arising out of what defendants ascribed to inadequate work performance, and a number of memos disparaging her work were prepared. According to plaintiff, she was called into Silitschanu's office on January 6, 1977 where, with the door open, he "blasted her head off", stating that she should change her attitude, that she was "incapable", an "animal" and a "bad influence" on her co-workers. Thereafter, his verbal abuse supposedly persisted. In addition, evidently as a result of her failure to complete within the required 30 days a payroll for retroactive wage increases due under a new union contract, and her inability or unwillingness to come in on the weekend in order to meet the deadline, Walter Cravens, her immediate supervisor, wrote a memo to the effect that he had lost confidence in her work. On April 20, 1977, she was suspended without pay for five days, and her attorney husband sent a letter dated April 22, 1977, protesting the suspension and criticizing Silitschanu.

Plaintiff returned to her job on April 28, 1977, but her problems with her superiors continued. Sometime in late 1977 or early 1978, Cravens wrote another memo to Silitschanu regarding plaintiff's purportedly unsatisfactory performance and poor attitude which recounted various conflicts between her and her co-workers, observing that "because of her disposition and her attitude Mrs. Williams is very difficult to work with". Then, on or about April 14, 1978, plaintiff complained about the amount of work involved in undertaking a "sick pay audit" requested by Varig so it could recoup Social Security payments for periods during which employees were out on sick leave. Cravens insisted that the task be done and, on May 8th, he composed another critical memo. At the end of that day, Silitschanu summoned plaintiff to his office and presented her with a letter of termination which declared, in part, that "[h]aving reviewed your employment record and, in particular your work performance and attitude since your disciplinary suspension, the Company has concluded that you are failing to meet the standards we expect from an employee occupying

your position." Prior to departing the building, plaintiff supposedly informed several employees that she had been fired, and, as she passed the Sales Department offices, she announced, "Please may I have your attention. I have just been fired by Boris Silitschanu."

One of plaintiff's personal friends, Benito Romero, asserts that at one point between May and July of 1978, he had occasion to visit Varig's premises, and, while there, he engaged in a brief private conversation with Silitschanu. He approached Silitschanu who, in response to being asked about plaintiff's whereabouts, replied that she was no longer with Varig, having been fired. Romero further recalls that Silitschanu also accused plaintiff of not being a good employee, of being "unqualified", "unfit", of "creating problems for the Company and other employees", "causing morale damage", and "creating expenses for the company".

This action was commenced in July of 1978. Subsequently, all of plaintiff's causes of action with the exception of her slander and libel claims were dismissed by the Supreme Court, and her ensuing appeal was unsuccessful. Defendants chose not to appeal from the denial of their motion to dismiss insofar as it related to the fifth and sixth causes of action, preferring to proceed with discovery before renewing their attack upon the allegations of slander and libel. Upon the completion of discovery, defendants submitted the instant motion for summary judgment, the denial of which forms the basis of the present appeal. In the view of the Supreme Court:

"That branch of the motion which seeks dismissal of the fifth cause of action is denied. Issues of fact exist which bar summary judgment (CPLR 3212), including whether the allegedly defamatory oral publications to Benito Romero, and others, were made maliciously, and were false statements.

"That branch of the motion which seeks dismissal of the sixth cause of action also is denied. Issues of fact exist which bar summary judgment (CPLR 3212), including whether the written statements in question were false, were made maliciously, with knowledge of their falsity, and/or with reckless disregard for the truth, and whether the statements were published to third parties."

However, an examination of the record fails to reveal the existence of a viable claim with respect to either the slander or libel cause of action. In the second amended complaint, plaintiff mentions several purportedly defamatory oral utterances by Silitschanu. In initially rejecting defendants' motion

to dismiss, the Supreme Court nonetheless noted that plaintiff had not set forth the time, manner and persons to whom the publication was made, citing CPLR 3016 (a). Thereafter, defendants served interrogatories upon plaintiff demanding specifics concerning the identity of third persons to whom the slander was disseminated, as well as the date, place and content of each oral communication. Plaintiff's answer failed to cure the defect by stating, without particularity, that 66 persons were present and that the utterances were made from January of 1977 until the end of 1980 at the offices of Varig and over the telephone. Thus, plaintiff has failed to identify by name anyone other than Romero who actually heard any alleged slander nor, despite the passage of so many years and ample opportunity to locate potential witnesses, has she produced a single affidavit or deposition from anyone besides Romero who was exposed to such supposed defamation. Indeed, the only specific instance of verbal abuse supplied by plaintiff occurred on January 6, 1977 and was, assuming it actually took place, communicated directly to her, and there is no evidence whatever that it was overheard by anyone else. In any event, any claim as to that date is time barred (CPLR 215 [3]).

Moreover, the purported slander uttered to Romero sometime between May and July of 1978, shortly after plaintiff's discharge, in the course of a hurried conversation with Silitschanu, was apparently not made known to plaintiff until 1986 so it was, therefore, not included in the complaint itself, and she failed to refer to it when deposed. Even if submission of Romero's 1986 affidavit can be deemed to constitute an amended pleading (see, Matter of Smith v Board of Educ., 104 AD2d 445), the claim based upon this alleged defamation is precluded by reason of the Statute of Limitations. Certainly, it can scarcely be found that the dissemination of slander to Romero relates back to any matters that were timely asserted so that defendants were accorded the requisite "notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading" (CPLR 203 [e]). The fifth cause of action of the second amendment complaint merely charges that "on various occasions during the period of plaintiff's employ", Silitschanu made certain slanderous . statements; the allegations contained therein did not put defendants on notice that there were any postemployment defamations involved as well. Consequently, the Supreme Court should have granted the motion to dismiss the fifth cause of action.

The sixth cause of action is also defective. The writings from

which plaintiff's libel claim arises consist of five documents: the internal memo from Cravens to Silitschanu dated April 18, 1977, Silitschanu's letter to plaintiff of April 20, 1977, the letter by Albert Diz (another Varig employee) to plaintiff's husband dated April 27, 1977, an undated memo from Cravens to Silitschanu and Silitschanu's letter to plaintiff of May 8, 1978. The writings of April 18, 1977, April 20, 1977 and April 27, 1977 were simply placed in plaintiff's file after being issued, and plaintiff has not produced a single name or date, in fact no evidence whatsoever, to support her conclusory assertion that defendants ever republished this material. In the absence of any indication of subsequent republication, claims with respect to such writings are barred by the one-year Statute of Limitations (CPLR 215 [3]).

As for the undated Cravens memo and the May 8, 1978 discharge letter, these are clearly expressions of opinion which are not actionable. As the Court of Appeals held in *Rinaldi v Holt, Rinehart & Winston* (42 NY2d 369, 380, *cert denied* 434 US 969), "[o]pinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions" *(see also, Milkovich v Lorain Journal Co.,* 497 US —, 111 L Ed 2d 1; *Steinhilber v Alphonse,* 68 NY2d 383; *Satler v Larsen,* 131 AD2d 125; *Parks v Steinbrenner,* 131 AD2d 60). Thus, such statements as accusing a college professor of " '[L]ying, deceiving, making false promises, not advising, ill advising, misleading' " and contending that certain property owners " ' "are very difficult to deal with" ' " have been held to be protected expressions of opinion in *Epstein v Board of Trustees* (152 AD2d 534, 535) and *Levittown Norse Assocs. v Day Realty Corp.* (150 AD2d 263), respectively. Plainly, comments contained in the undated Cravens memo and the May 8, 1978 letter concerning plaintiff's work and attitude are expressions of opinion which, as a matter of law, do not constitute defamatory statements. Finally, it should be pointed out that an employer has the right, without judicial interference, to assess an employee's performance on the job *(see, Noble v Creative Tech. Servs.,* 126 AD2d 611; *Kasachkoff v City of New York,* 107 AD2d 130, *affd* 68 NY2d 654) since "[a] communication made by one person to another upon a subject in which both have an interest is protected by a qualified privilege" *(Stillman v Ford,* 22 NY2d 48, 53). Concur—Kupferman, J. P., Milonas, Rosenberger and Ellerin, JJ.