[704 NYS2d 1]

J OHN T. D ILLON, J R., et al., Respondents, v C ITY OF N EW Y ORK et al., Appellants.

First Department, December 14, 1999

## APPEARANCES OF COUNSEL

*Gary T. Certain* of counsel, New York City (*Certain & Monopoli, L. L. P.,* attorneys), for respondents.

*Helen P. Brown* of counsel, New York City (*Kristin M. Helmers* and *Michele Lerner* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellants.

## OPINION OF THE COURT

Tom, J.

Defendants appeal from an order of the Supreme Court denying their motion to dismiss the complaint of two former Assistant District Attorneys (ADA) of Bronx County for defamation and related claims.

Plaintiffs were appointed to the position of Assistant District Attorney in Bronx County in August 1993. Prior to being hired, they signed a document, as a condition of employment, indicating their acknowledgment that "Assistant District Attorneys are required to abide by a commitment to give four years of initial service to the Office of the District Attorney. Failure to honor that commitment may result in a loss of benefits and an

unfavorable termination from the Office." The District Attorney's (DA) office policy manual included the same statement of policy. In July 1995, the DA's office reduced the employment commitment period to three years, which was communicated to plaintiffs on or about August 24, 1995.

Both plaintiffs putatively ended their tenure with the Bronx District Attorney's office by the submissions of letters of resignation prior to the three-year commitment period.

Plaintiff Michael Newman submitted his resignation to the Administrative ADA, defendant Eileen Koretz, on Monday, August 28, 1995. Later that day, Newman's Bureau Chief, defendant Joseph Ferdenzi, asked Newman why he had handed in a resignation letter without first discussing the matter with him. Newman responded by noting that the DA's office had a policy of terminating ADA's who failed to complete their commitment period, and he wanted to make sure that it was clear that he was resigning to avoid termination. Subsequently, Newman met with the Executive Assistant District Attorney, defendant Richard Mangum, who rejected the resignation and terminated Newman for having violated the office's commitment period policy. Mangum indicated that the termination would be noted in Newman's personnel file and would be communicated to any prospective employer making inquiries. A memorandum in Newman's personnel file, apparently written by Koretz, is said to contain only a handwritten notation: "Terminated—Did Not Fulfill Commitment." This memorandum, though, is not included in the record. Newman alleges that other memoranda—also not included in the record—contained similar language.

Later that day, Ferdenzi called a meeting of Bureau personnel at which, it is alleged, Ferdenzi told the assembled ADA's that he had "fired" Newman. Newman alleges that Ferdenzi also intimated that the discharge was for cause, and that the general tenor of Ferdenzi's presentation emphasized the importance of trust and the fault of being underhanded, implying the absence of that virtue in him. The actual words used are not particularized in the complaint, and no affidavit of anyone attending that meeting is included in the record.

In early December 1995, ADA Michele Monopoli, apparently intending to enter practice with Newman and others, tendered her voluntary resignation to Mangum, who conducted her exit interview. Newman alleges that Mangum tried to discourage her from entering practice with him, stating "one of your partners—Gary—is an upstanding guy as you and I well know;

the other"—apparently suggesting Newman—at which point Mangum made deprecating facial expressions and shook his head—"he had some nerve pulling that shit while his brother is still in this office * * * what a fucking asshole." Mangum then asked, rhetorically, why she was not being made a name partner in the firm, then, apparently answering his own inquiry, surmised "it sounds like you don't trust your partner any more than I do." No affidavit by Monopoli appears in the record.

Plaintiff John Dillon was hired at the same time as Newman. Dillon, too, submitted a typewritten resignation, on October 6, 1995, effective that date. Dillon first submitted his resignation to his Bureau Chief, ADA Joseph Giampaolo, but Giampaolo indicated that the resignation should be submitted directly to the District Attorney, defendant Robert Johnson. After the letter was submitted to Johnson, Giampaolo indicated that Dillon should remain in the office until he was contacted by Johnson. Johnson left that day without contacting Dillon, who then submitted it to Senior Executive Assistant District Attorney Eric Warner. Plaintiff Dillon alleges that on or about November 15, 1995, Koretz wrote him a letter, subsequently placed in his personnel file and allegedly shown to other employees, stating that Dillon had acted unprofessionally. However, this letter is not included in the record. Dillon also asserts that Koretz issued a memorandum dated October 11, 1995, stating that Dillon had been terminated and had not fulfilled his commitment. Dillon further states that during the winter of 1996, members of the District Attorney's office communicated to the District of Columbia's Board of Bar Examiners that Dillon had been terminated.

Plaintiffs' complaint sets forth, *inter alia*, causes of action for defamation and for negligent and intentional infliction of emotional distress on behalf of both plaintiffs. Defendants moved to dismiss the complaint or, in the alternative, for summary judgment.

The IAS Court, apparently treating the motion as one for summary judgment, denied the motion in its entirety. The court found triable factual issues concerning Newman's last effective date of employment, the truthfulness of statements that both plaintiffs were terminated, and whether the defendants' conduct was so extreme as to support the emotional distress claims. We reverse.

Defamation has long been recognized to arise from "the making of a false statement which tends to ' "expose the plaintiff to

public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society" ' " (*Foster v Churchill*, 87 NY2d 744, 751, quoting *Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 379, *cert denied* 434 US 969, quoting *Sydney v MacFadden Newspaper Publ. Corp.*, 242 NY 208, 211-212). The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se (Restatement [Second] of Torts § 558). CPLR 3016 (a) requires that in a defamation action, "the particular words complained of * * * be set forth in the complaint." The complaint also must allege the time, place and manner of the false statement and specify to whom it was made (*Arsenault v Forquer*, 197 AD2d 554; *Vardi v Mutual Life Ins. Co.*, 136 AD2d 453).

In evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction (*Silsdorf v Levine*, 59 NY2d 8, *cert denied* 464 US 831). "[C]ourts ' "will not strain" ' " to find defamation "where none exists" (*Cohn v National Broadcasting Co.*, 50 NY2d 885, 887, *cert denied* 449 US 1022). Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable (*Gross v New York Times Co.*, 82 NY2d 146, 152-153; *Immuno AG. v Moor-Jankowski*, 77 NY2d 235, 244, *cert denied* 500 US 954). Internal employment reviews also may be protected speech, either as an expression of opinion, or in recognition of the principle that "[a]n employer has the right to assess an employee's performance on the job without judicial interference" (*Ott v Automatic Connector*, 193 AD2d 657, 658), often allowing for dismissal on the pleadings (*supra*; *see also, Williams v Varig Brazilian Airlines*, 169 AD2d 434, *lv denied* 78 NY2d 854 [internal memorandum stated that plaintiff had a bad attitude and was difficult to work with]; *Goldberg v Coldwell Banker*, 159 AD2d 684 [plaintiff said to be uncooperative, abrasive and dilatory]; *Hollander v Cayton*, 145 AD2d 605 [hospital employee said at professional staff meeting that physician plaintiff was immoral, unethical and had mismanaged cases]).

Truth provides a complete defense to defamation claims (*Rinaldi v Holt, Rinehart & Winston, supra; Fairley v Peekskill Star Corp.*, 83 AD2d 294, 297). Allegations of defamation present, in the first instance, an issue of law for judicial determination (*Silsdorf v Levine*, 59 NY2d 8, 12-13, *cert denied* 464 US 831, *supra; James v Gannett Co.*, 40 NY2d 415, 419-420).

■ Plaintiffs complain that communicating to third parties that they had been "terminated" defamed them and harmed their professional reputation. A salient fact upon which this analysis turns is that, under the terms of their employment, plaintiffs did not have the right to resign at will during the contractual commitment period. While plaintiffs were obligated to remain for the commitment period, the policy manual did not create any obligation on the employer to retain plaintiffs' services for a term certain absent an expressed agreement (*Sabetay v Sterling Drug*, 69 NY2d 329, 336; *cf., Murphy v American Home Prods. Corp.*, 58 NY2d 293, 305). There being no express limitation on the employer's right to terminate plaintiffs (*Sabetay v Sterling Drug, supra; Civiletti v Independence Sav. Bank*, 236 AD2d 436), they could be fired for cause as a consequence of their breach of their employment agreement by not fulfilling their commitment period obligation. Since the District Attorney retained the contractual right to terminate their employment on this basis, and to characterize the severance of the employment relationship as termination, statements to that effect were true. Since truth is a complete defense, these claims should have been dismissed.

Parenthetically, to allow an employee who contractually commits to work a number of years, which is common in many prosecutors' offices, to "resign" prior to satisfaction of the commitment period, and then threaten to sue for defamation if the employer characterizes the employee's departure as termination, would render meaningless the contractual commitment.

Plaintiffs argue that the District Attorney's own unilateral reduction of the commitment period from four years to three years abrogated the contractual commitment. This is meritless. The District Attorney's action only reduced the extent, and not the obligation, of employees' time commitments.

Plaintiff Newman also argues a defamation theory arising from Ferdenzi's alleged statement to other Bureau employees at the August 28, 1995 meeting, announcing that Newman had been "fired" (a true statement), intimating that it was for cause (again, true), and implying that Newman was untrustworthy and underhanded. The particular words giving rise to the

implication are not set forth in any manner that would support a defamation claim, leaving only a vague and conclusory allegation requiring the dismissal of claims arising from these alleged statements (*Vardi v Mutual Life Ins. Co.*, *supra*; *Flowers v Stillrock Mgt.*, 179 AD2d 361; *Alanthus Corp. v Travelers Ins. Co.*, 92 AD2d 830).

The challenge to the Koretz letter suffers from the same defect, that the particular defamatory words are not alleged in the complaint. Allegations that the letter communicated to third parties that "in sum and substance [Dillon was] unprofessional and cavalier" are conclusory rather than accusatory, fail to specify time, place and manner of the communication (*Arsenault v Forquer*, *supra*; *Vardi v Mutual Life Ins. Co.*, *supra*), and do not satisfy the pleading requirement of CPLR 3016 (a) that the actual defamatory words be specified. The defect is all the more curious in that Dillon concedes being a recipient of the letter, presumably enabling him to quote from it at length. Moreover, to the extent that memoranda are prepared for internal use in connection with an employee review, or are placed in a personnel file, or statements are made about an employee in an employment context (*see, Williams v Varig Brazilian Airlines*, *supra*; *Hollander v Cayton*, *supra*), they are qualifiedly privileged as having been made by one person to another upon a subject in which they have a common interest (*Liberman v Gelstein*, 80 NY2d 429, 437; *Loughry v Lincoln First Bank*, 67 NY2d 369, 376; *accord, Herlihy v Metropolitan Museum of Art*, 214 AD2d 250, 259 [statements among fellow employees about an employee in an employment context may enjoy qualified privilege]). The shield of privilege is pierced only by a plaintiff's showing of actual malice (*Liberman v Gelstein*, *supra*, at 437-438; *Loughry v Lincoln First Bank*, *supra*). Actual malice is not supported in these pleadings where allegations of ill will and spite manifested by the letter rest solely on surmise and conjecture (*Dano v Royal Globe Ins. Co.*, 59 NY2d 827, 829; *Hollander v Cayton*, *supra*).

Newman also challenges various Mangum statements to Monopoli uttered during her exit interview. These statements are particularized in the complaint. However, even if we surmise that Newman is "the other" partner to whom Mangum alludes, whether or not he is stated to be "upstanding" is too vague and imprecise in meaning to support a defamation claim (*Gross v New York Times Co.*, *supra*, at 153; *Savitt v Vacco*, 1998 US Dist LEXIS 15582, * 21-22, 1998 WL 690939, 7 [ND NY, Sept. 28, 1998, Pooler, J.] [terminated Assistant Attorneys General

characterized as "dead wood" and "dead bodies", terms lacking precise meaning]; *Hollander v Cayton, supra*; *Goldberg v Coldwell Banker, supra*). The epithet used by Mangum could not reasonably have been construed to communicate actual facts, and thus evades defamation (*Gross v New York Times Co., supra*; *Immuno AG v Moor-Jankowski, supra*, at 244; *600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d 130, 139-140, *cert denied* 508 US 910). The remainder of the statement conveyed only nonactionable opinion based on facts known to both the declarant and the listener (*Steinhilber v Alphonse*, 68 NY2d 283, 289).

 The emotional distress claims, arising from the same conduct as the defamation claims, are entirely meritless. Initially, claims of intentional infliction of emotional distress against government bodies are barred as a matter of public policy (*Lauer v City of New York*, 240 AD2d 543, *lv denied* 91 NY2d 807; *Wheeler v State of New York*, 104 AD2d 496, 498). In any event, the pleadings are insufficient for other reasons. A cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303, *supra* [citation omitted]; *see also, Howell v New York Post Co.*, 81 NY2d 115, 121-122). We have applied the same standard to both the intentional and negligence theories of emotional distress (*Young v GSL Enters.*, 237 AD2d 119; *Naturman v Crain Communications*, 216 AD2d 150). Such extreme and outrageous conduct must be clearly alleged for the pleadings to survive dismissal (*Trachtman v Empire Blue Cross & Blue Shield*, 251 AD2d 322). To the extent that the statements complained of are true, plaintiffs can hardly claim sufficient distress; thus, dismissal is required in this case (*Lauer v City of New York, supra*). Moreover, the alleged disparagement of plaintiffs' characters in this case simply does not rise to that standard. In this day and age the epithet, while hardly admirable, cannot reasonably be said to perpetrate so great a harm as that required for emotional distress.

The remainder of the claims set forth in the complaint are not briefed by the parties on appeal and were not directly addressed in the order under review. Upon review of the record, we conclude that these claims should also be dismissed. The retaliatory discharge claims allege only that plaintiffs were

terminated in retaliation for trying to resign; this is perhaps true, but, in view of the employer's contractual right to do so, plaintiffs fail to allege how the discharge was wrongful (*Murphy v American Home Prods. Corp.*, *supra*, at 300; *Civiletti v Independence Sav. Bank*, *supra*).

The negligence claim, alleging harm arising from the dissemination of false information in a negligent and careless manner to prospective employers, must fail insofar as those statements were true. The causes of action purporting to raise Insurance Law and Labor Law claims based on rejection of reimbursement for Newman's wife's dental work, fail to indicate any section of either statute that was violated. In any event, since the District Attorney's office now represents, and may be held to that representation, that it will arrange for payment, plaintiffs have no damages in this regard. The breach of contract claim arising out of the District Attorney's substitution of a three-year commitment period for a four-year period is frivolous. The equal protection claim, alleging that other Assistant District Attorneys, unidentified except for a single named employee, were allowed to leave prior to satisfaction of their commitment periods, is unsubstantiated except as to that named employee. In any event, even if true, waiving the terms of a contract as to one person and declining to do so for others does not make out an equal protection claim.

Accordingly, the order of the Supreme Court, Bronx County (Gerald Esposito, J.), entered March 24, 1998, which denied defendants' motion to dismiss the complaint, should be reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint.

ROSENBERGER, J. P., MAZZARELLI, LERNER and FRIEDMAN, JJ., concur.

Order, Supreme Court, Bronx County, entered March 24, 1998, reversed, on the law, without costs, defendants' motion to dismiss the complaint granted, and the complaint dismissed.