**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2586 and 10-3076
_____

GEORGE E. KERSEY,
                    Appellant

v.

BECTON DICKINSON AND CO.;
ESTATE OF JOSEPH R. PARADIS;
CAROL PARADIS; DEAN B. BELL
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 2-08-cv-02155)
District Judge:  Honorable Garrett E. Brown, Jr., Chief Judge
_____

Submitted Under Third Circuit LAR 34.1(a)
June 20, 2011
_____

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Opinion Filed:  June 24, 2011)
_____

OPINION
_____

BARRY, Circuit Judge

        George Kersey, an attorney appearing pro se, appeals from two orders of the

District Court granting summary judgment to defendants-appellees, denying Kersey's

cross-motion for summary judgment, and sanctioning Kersey more than $49,000. We will affirm.

I.

On May 2, 2008, Kersey, a Rhode Island resident, filed a complaint in the District of New Jersey against Becton Dickinson and Co. ("Becton Dickinson"), a New Jersey corporation, the Estate of Joseph R. Paradis ("Paradis Estate" or "the Estate"), Carol Paradis, the executrix of the Estate, and Dean B. Bell, a South Carolina attorney who represented Paradis. Kersey alleged that he was a third-party beneficiary to a contract between Becton Dickinson and the Estate, and that the Estate had not paid Kersey certain agreed-upon payments for Kersey's services as a patent attorney. Specifically, Kersey alleged that Becton Dickinson was obligated to pay $100,000 in annual royalty payments to the Paradis Estate, and that Kersey's agreement with the Estate entitled him to 10 percent of any royalties. He alleged that the Estate had not made payments since July 2007, and demanded that his "third party share" of the $100,000 payments "be deducted from the amount remitted to Paradis and be paid directly to Kersey." App. at 27.

Kersey also alleged that Bell defamed him by making and publishing "attacks on my personal professional character and standing." *Id.* at 28. Kersey's defamation claim resulted from communications between him and Bell, in relation to Bell's representation of Paradis. Bell contacted Kersey by letter on August 16, 2007, noting that "serious problems" had arisen with certain patents that Paradis inherited from the Estate as a result

2

of Kersey's errors, and that Kersey should immediately provide the documentation relating to those patent applications and assignments. *Id.* at 52-53. Bell also stated that he was "aware of your problems with regard to your license to practice law," *id.* at 52, and that "inasmuch as it appears that you are no longer licensed to practice law, and as such, will no longer be able to fulfill your responsibilities under your agreement with Mr. Paradis, the responsibilities for maintaining and monitoring these patents and Patent Applications will be transferred to a new attorney." *Id.* at 53. Bell sent a copy of the letter to Paradis.

On September 1, 2007, Kersey responded to Bell and disclaimed responsibility for any errors with the patents. He also took issue with Bell's statement about his "problems" with regard to his law license. Kersey stated that "[t]he fact of the matter is that I am in good standing for the practice of law with, for example, the State of New York." *Id.* at 54. As reflected in exhibits submitted to the District Court as part of the summary judgment motions, Kersey had been disbarred from the practice of law in New Hampshire in 2004 and Massachusetts in 2005, reprimanded by the Supreme Court of New Jersey in 2005, and publicly censured by the New York Appellate Division in 2006. Additionally, in June 2007, the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("USPTO") upheld Kersey's exclusion from practicing before the USPTO.

On September 19, 2007, Bell requested that Kersey ship all files related to the

3

Paradis patent matters to Ms. Paradis' son. Receiving no response, Bell again wrote to Kersey on October 18, 2007, requesting transfer of the files and noting that "[y]our services as patent attorney have been terminated . . . Unless appropriate response is received to this request, Ms. Paradis will have no option other than to contact the appropriate administrative authorities to request whatever relief may be available through the applicable ethical rules." *Id.* at 71. Kersey responded on October 25, 2007 and stated that he was owed $2,500 in royalty payments from the Estate's agreement with Becton Dickinson. On November 1, 2007, Bell wrote to Mark Ochs, the Chief Attorney of the Third Judicial Department of the New York Appellate Division, Committee on Professional Standards, complaining that Kersey was refusing to release Paradis' patent files and inquiring whether the committee had authority to require Kersey to release the files. *Id.* at 73-74. Bell's letter included copies of the previous communications with Kersey, and Bell also sent a copy of the letter to Paradis.

On September 19, 2008, Kersey, the Estate, and Carol Paradis entered into a settlement agreement whereby the Paradis defendants agreed to pay Kersey $10,000 to settle all alleged debts of the Estate through the second quarter of 2008. The Paradis defendants also agreed to pay Kersey 10 percent of any future royalties received for patents that Kersey had prosecuted, and Kersey agreed to return the patent files. The parties stipulated to the dismissal of the Paradis Estate and Carol Paradis as defendants.

Following discovery, Bell and Becton Dickinson moved for summary judgment

4

and for sanctions against Kersey. Kersey cross-filed for summary judgment. On May 6, 2010, the District Court granted Becton Dickinson's and Bell's motions for summary judgment. The Court found Kersey's claims to be frivolous and awarded reasonable attorney fees and costs to Becton Dickinson and Bell. Following briefing, on June 21, 2010, the Court awarded Becton Dickinson $16,059.47 and Bell $33,061.08.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo*, applying "the same standard as the District Court in determining whether summary judgment was appropriate." *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a district court's sanctions determination for abuse of discretion. *See In re Grossman's Inc.*, 607 F.3d 114, 119 n.4 (3d Cir. 2010).

## A.

Kersey's claim against Becton Dickinson is grounded in his desire to have his 10 percent "cut" of the Becton Dickinson royalty payments paid directly to him by Becton Dickinson, rather than by the Paradis defendants, as Kersey agreed to in the September 19, 2008 settlement agreement. Kersey argues that he is a third-party beneficiary to a 1995 license agreement between Becton Dickinson and Joseph R. Paradis providing for a

5

minimum royalty payment of $100,000 annually. Inexplicably, Kersey contends that this third-party status entitles him to force Becton Dickinson to subtract 10 percent of its royalty dues to the Paradis defendants and pay that amount directly to him.

Kersey has no claim against Becton Dickinson because Kersey is not a third-party beneficiary to the license agreement. Because Kersey was not a party to the agreement, it is not clear whether we should apply Utah law, as the contract instructs, or New Jersey law, the law of the forum state. We need not determine this issue, however, because under either law Kersey is not a third-party beneficiary. Under both states' laws, the intent of the contracting parties is the key consideration. *See Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002) (third-party beneficiary status is determined by examining the written contract, which must show that the contracting parties "clearly intended to confer a separate and distinct benefit upon the third party" (citation and internal quotation marks omitted)); *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982) ("The principle that determines the existence of a third party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement."). Nothing in the licensing agreement suggests that Kersey was an intended third-party beneficiary, rather than an incidental beneficiary with no contractual standing. Becton Dickinson was entitled to summary judgment.

We note that the District Court granted Becton Dickinson's motion for summary

judgment based on its determination that Kersey's claim to a percentage of royalty payments had been settled in the September 19, 2008 agreement between Kersey and the Paradis defendants. In addition to finding that Kersey is not a third-party beneficiary of the 1995 license agreement, we agree that the September 19, 2008 agreement extinguished any legal claims that Kersey may have had against Becton Dickinson. The 2008 settlement provided that the Paradis defendants would pay Kersey the 10 percent future royalty payments, and the settlement papers created a specific schedule for making those payments. Any judgment against Becton Dickinson would necessarily undermine the settlement agreement and result in an unwarranted double payment to Kersey.

### B.

Kersey's complaint states that his defamation claim against Bell is based on "attacks on my personal professional character and standing; including his letter of 10-18-07." App. at 28. In later filings, Kersey also specifies the "wrongful complaint filed against me with New York State" as a basis for his claim, Supp. App. at 19, and in his reply brief Kersey contends that statements in Bell's August 16, 2007 letter defamed him. Read liberally, the only possible defamatory statements include (1) the statements in the August 16, 2007 letter regarding Kersey's alleged mistakes in the maintenance of the Paradis patents and Kersey's inability to practice law and fulfill his responsibilities as a patent attorney; and (2) the allegations within the November 1, 2007 letter to the New York Committee on Professional Standards that Kersey (a) was withholding the Paradis

7

patent files in order to "extract a payment out of my client;" and (b) had failed to maintain the Paradis patents and had caused Ms. Paradis "significant financial losses." App. at 74. No statement within the October 18, 2007 letter is possibly defamatory; a person is not exposed to defamation liability for threatening to raise ethics violations with the appropriate authorities when the person alleges no specific ethics violations.

As an initial matter, the District Court was correct to apply the law of New Jersey to Kersey's defamation claim, even though the alleged defamatory statements were published to third parties in South Carolina and New York. We apply the forum state's laws and choice of law rules to diversity actions. *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977). Under New Jersey's choice of law rules, we must first determine whether a conflict exists between the laws of the interested states, and if there is no conflict, then the forum state's laws apply. *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007). The District Court found that the elements of defamation in New Jersey, South Carolina, and New York did not conflict, and we agree. *See*, *e.g.*, *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004); *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006); *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1st Dep't 1999). Accordingly, under New Jersey's defamation law, Kersey was required to establish "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher."

8

*DeAngelis*, 847 A.2d at 1267-68.

Several of Bell's alleged defamatory statements were true, so by definition they cannot be defamatory. These include the statements in the August 16, 2007 letter that Bell was "aware of your problems with regard to your license to practice law," and that Kersey "will no longer be able to fulfill [his] responsibilities under [his] agreement with Mr. Paradis" for maintaining and monitoring the Paradis patents. App. at 53. As to the first statement, even though Kersey was licensed to practice law in New York, he had been disbarred in two states and reprimanded in two others; he clearly had "problems" with regard to his license to practice law. Regarding the second statement, the USPTO had excluded Kersey from practicing before it, so he necessarily could not fulfill his obligations vis-à-vis the Paradis patents.

Bell's remaining allegedly defamatory statements are privileged. New Jersey recognizes a litigation privilege immunizing from liability statements "made in the course of judicial, administrative, or legislative proceedings." *Hill v. N.J. Dep't of Corr. Comm'r*, 776 A.2d 828, 840 (N.J. Super. Ct. App. Div. 2001). The privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995) (citation and internal quotation marks omitted). The communications in the August 16, 2007 letter related to the maintenance and

9

reinstatement of certain Paradis patents as well as Bell's notification to Kersey that his patent duties would be transferred to another attorney. Bell's letter was intended to resolve problems, prior to litigation, regarding the Paradis patents and Kersey's alleged failure to maintain the patents. This type of communication falls under the litigation privilege and is exempt from liability for defamation. *See Hill*, 776 A.2d at 840 (noting that the litigation privilege "covers statements made during settlement negotiations or while engaged in a private conference with an attorney regarding litigation").

Bell's November 1, 2007 letter to the New York Committee on Professional Standards was absolutely privileged. The Supreme Court of New Jersey has adopted a rule granting an ethics complainant immunity from suit by the lawyer against whom the complaint was made. *See In re Hearing on Immunity for Ethics Complainants*, 477 A.2d 339, 341-44 (N.J. 1984) (invalidating statute allowing attorney to bring malicious prosecution action against ethics complainant); *see also Toker v. Pollak*, 376 N.E.2d 163, 168 (N.Y. 1978) (recognizing absolute immunity from suit in New York for filing a complaint before a grievance committee of a bar association). Bell's November 1, 2007 letter to the New York Committee on Professional Standards is the exact type of ethics complaint covered by the privilege. The District Court properly granted summary judgment to Bell on Kersey's defamation claim.

C.

The District Court did not abuse its discretion in awarding Becton Dickinson and

Bell litigation sanctions under Federal Rule of Civil Procedure 11. Kersey, an experienced attorney, pursued obviously frivolous claims against Becton Dickinson and refused to dismiss the company as a defendant even after reaching an agreement with the Paradis defendants. Kersey's third-party beneficiary claim was clearly baseless, and the District Court correctly sanctioned Kersey for his pursuit of the claim. *See Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (sanctions under Rule 11 only prescribed "in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous" (internal citation and quotation marks omitted)). Likewise, Kersey's defamation claim against Bell was poorly pled, contrary to clear law, and seems, even from the removed perspective of a reviewing court, intended to harass.

III.

We will affirm the orders of the District Court.

11