**BIOMED PHARMACEUTICALS, INC., Plaintiff,**

v.

**OXFORD HEALTH PLANS (N.Y.), INC., Defendant.**

**No. 10 Civ. 7427(JSR).**

United States District Court, S.D. New York.

July 5, 2011.

Michael Joseph Dillon, McDermott, Will & Emery, LLP, New York, NY, Steven Elliot Siff, McDermott Will & Emery LLP, Miami, FL, for Plaintiff.

Michael H. Bernstein, Elizabeth Richer Chesler, John T. Seybert, Sedgwick, Detert, Moran & Arnold, LLP, New York, NY, for Defendant.

## MEMORANDUM

JED S. RAKOFF, District Judge.

On September 28, 2010, defendant Oxford Health Plans (N.Y.), Inc. ("Oxford")[1] removed the above-captioned action from New York State court. On October 12, 2010, plaintiff Biomed Pharmaceuticals, Inc. ("Biomed") filed an Amended Complaint, which Oxford moved to dismiss on October 28, 2010. On February 17, 2011, the Court issued a Memorandum Order concluding that Biomed had both constitutional and statutory standing to pursue its claims and granting Biomed leave to amend its complaint one last time. On March 1, 2011, Biomed filed a Second Amended Complaint asserting the following causes of action: violation of ERISA [§ 502(a)(1)(B) ], 29 U.S.C. § 1132(a)(1)(B) (Count One); first violation of ERISA [§ 502(a)(3) ], 29 U.S.C. § 1132(a)(3) (Count Two); second violation of ERISA [§ 502(a)(3) ], 29 U.S.C. § 1132(a)(3) (Count Three); third violation of ERISA [§ 502(a)(3) ], 29 U.S.C. § 1132(a)(3) (Count Four); and commercial defamation/slander per se (Count Five[2]). On March 21, 2011 Oxford moved to dismiss Counts Two through Five of the Second

---

1. The original action also named as defendants UnitedHealth Group Incorporated and Oxford Health Insurance, Inc. However, on October 27, 2010, the parties submitted a stipulation agreeing to amend the caption to reflect that plaintiff sought relief only against defendant Oxford Health Plans (N.Y.), Inc.

The Court so-ordered this stipulation on October 27, 2010.

2. "Count Five" is incorrectly pled as "Count Four" in the Second Amended Complaint. See 2d Am. Compl. at p. 28. For the sake of clarity, this Memorandum will simply refer to the last Count pled as Count Five.

Amended Complaint. Following a full round of briefing and oral argument, the Court issued an Order on April 19, 2011 granting Oxford's motion in its entirety and dismissing Counts Two through Five, with prejudice. This Memorandum explains the reasons for the Court's decision.

The facts as alleged in Biomed's Second Amended Complaint are as follows. Oxford is an insurer that offers employee welfare health plans. 2d Am. Compl. ¶ 6. Oxford's Point–of–Service ("POS") plans allow members, for a higher premium, the choice of going in-network or out-of-network for care. *Id.* ¶ 7. Oxford has contracted with United Stainless & Alloys/Solutions in Stainless to provide an employee welfare benefit plan (the "Plan") through Oxford's POS option. *Id.* ¶ 8. The Plan is subject to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001 *et seq.* ("ERISA"). *Id.* Under the Plan, Oxford has discretionary authority to make all benefit determinations and to pay benefits, and is therefore the Plan Administrator. *Id.* ¶ 9.

The instant dispute concerns a minor Patient (the "Patient") whose father is a Plan participant and who is himself a covered dependent (or beneficiary) under the Plan. *Id.* ¶ 10. The Plan requires the Patient to pay an annual deductible of $1,000 and 30% coinsurance towards the cost of services rendered by out-of-network providers ("ONPs"). *Id.* ¶ 11. However, the Patient's coinsurance expenditures for such services are limited to $4,000 per year, and once that maximum is reached, the Plan covers 100% of the allowable cost of covered services. *Id.* Thus, the Patient's total financial exposure for out-of-network care during a given year is $5,000. *Id.*

The Patient suffers from hemophilia, a chronic bleeding disorder that requires the regular administration of large doses of a "clotting factor" on short notice. *Id.* ¶ 13. The Patient previously received medication from a "Prior Pharmacy," an in-network provider with Oxford. *Id.* ¶ 23. Pursuant to a financial hardship policy, the Prior Pharmacy waived the portion of charges for which the Patient was responsible. *Id.* When the Prior Pharmacy refused to provide Patient with medication during one life-threatening incident, the Patient requested the assistance of Access Pharmaceuticals, Inc. ("Access"), an ONP. *Id.* ¶¶ 24–25. After this incident, the Patient used Access as its principal provider. *Id.*

On October 5, 2007, Access was acquired by Biomed, an ONP of intravenous and injectable medications for patients with chronic medical conditions. *Id.* ¶¶ 14, 26. After Biomed acquired Access, it learned that Access had granted a financial hardship waiver to the Patient. *Id.* ¶ 28. Biomed honored the waiver through the end of 2007. *Id.* Patient requested a similar waiver for 2008, which Biomed evaluated pursuant to its standard evaluation procedure. *Id.* ¶¶ 29–34. Based on this evaluation, Biomed "waived the Patient's coinsurance and deductible charges—i.e. $5,000, the Patient's maximum out-of-pocket expense under the Plan-for 2008. In other words, because of the Patient's financial hardship, Biomed forgave the $5,000 it was directly owed by the Patient in 2008." *Id.* ¶ 36. Biomed also granted the Patient financial hardship waivers in 2009 and 2010. *Id.* ¶ 37. When the Patient received medicine and services from Biomed, rather than pay Biomed first and then collect from Oxford, he assigned "all of [his] rights" under the Plan to Biomed. *Id.* ¶ 16 (citing Ex. C ¶ 5). However, this assignment did not relieve the Patient from his obligation to pay Biomed for services rendered. *Id.* ¶ 17. Oxford has dealt directly with Biomed since 2007. *Id.* ¶ 22.

On March 28, 2008, Jacqueline Rivera from Oxford's Special Investigation Unit conducted an audit of 17 covered individuals receiving services from Biomed, including the Patient. *Id.* ¶ 40. Ten of the covered members had applied for financial hardship waivers. *Id.* ¶ 41. Following this audit, Oxford continued to pay all claims in full except for Patient's. *Id.* ¶ 45. For services provided to Patient on and after April 11, 2008, Oxford reduced its payment to Biomed by 30%—the amount of "coinsurance application" under the Plan for Out–of–Network Providers' services. *Id.* ¶ 48. "However, Oxford did not discontinue this reduction after it had withheld $5,000 in benefit payments. Instead, [it] took the position that the Patient never reached his annual maximum out-of-pocket coinsurance amount of $4,000 (which amount was waived by Biomed pursuant to its financial hardship policy), which meant that Oxford could continue to reduce all benefit payments to the Patient indefinitely—and avoid its obligation to pay 100% of all claims once the out-of-pocket maximum was met." *Id.*

Biomed was "not adequately notified of this reduction, nor the reasons for Oxford's decision to cut its benefit payments." *Id.* ¶ 52. When Biomed became aware of the reduction, it contacted Oxford and attempted to reconcile the claims. *Id.* On July 9, 2009 Biomed filed a written appeal of the claim reduction. *Id.* By letter dated August 3, 2009, Susan Cervero, an Oxford Claims Project Manager, informed Biomed that as an ONP it had no right to appeal. *Id.* ¶ 62. Biomed responded by-letter, dated August 25, 2009, informing Oxford that it was appealing as the assignee of the Patient; by letter dated September 25, 2009, Oxford denied Biomed's right to appeal. *Id.* ¶ 63. However, on September 28, 2009, Rivera requested certain documentation from Biomed concerning the Patient's financial and medical status. *Id.* ¶ 67. She made a similar request on October 1, 2009. *Id.* ¶ 68. On April 21, 2010, Oxford's counsel wrote:

> In light of the recent evidence of collection of patient responsibility and the adoption of a formal hardship policy you provided me, we will no longer be reducing any of your client's claims by an additional amount of patient responsibility. However, we believe that our past reductions for [Patient] were justified since no out of pocket maximum was ever reached so we will not be paying anything additional on past claims.

*Id.* ¶ 73 (citing Exhibit D). Consequently, "Oxford reduced its payment for medically necessary services to [the] Patient by at least $1,506,695.87 ... during the period from April 11, 2008 through April 21, 2010." *Id.* ¶ 82. Biomed claims it is entitled to the benefits improperly withheld by Oxford under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶ 116.

In addition to this claim for benefits, Biomed asserts four other claims. First, Biomed claims that Oxford's review process for out-of-network claims did not meet ERISA standards for a full and fair review; "[i]n fact, Oxford's process did not provide any meaningful review even though Biomed explicitly stated that it was appealing as the Patient's authorized representative." *Id.* ¶ 100 (emphasis removed). *See also id.* at ¶ 88–100. Specifically, Biomed alleges that Jacqueline Rivera was involved in Oxford's initial decision to audit Biomed's collection practices, its decision to reduce payment to Biomed, and its decision to deny Biomed its right to appeal on behalf of the patient. *Id.* ¶ 120. Biomed therefore claims that Oxford violated 29 C.F.R. § 2560.503–1(h)(3)(ii) by failing to provide for a review conducted by an appropriate fiduciary of the Plan who is not the same individual who made the initial determination, and for failing to provide a review

that does not afford deference to the initial adverse benefit decision. *Id.* ¶¶ 118–119.

Second, Biomed claims that Oxford failed to provide notice of its adverse benefits determination in violation of 29 C.F.R. § 2560.503–1(g). *Id.* at p. 20; ¶ 124. For example, Biomed alleges that "[b]oth Oxford's Remittance Advices that accompanied payments to Biomed and [Explanation of Benefits ("EOBs") ] provided to the Patient failed to provide adequate notice of the specific reason for denying claims; failed to adequately explain the specific reasons for the reduction in payment in a manner calculated to be understood by the claimant; and failed to adequately explain the adjustment codes." *Id.* ¶ 92.

Third, Biomed claims that Oxford "failed as Plan Administrator because of additional contradictory or inconsistent positions with respect to the Patient's coverage under the Plan—positions that are ... tailored to benefit Oxford at the expense of the beneficiary." *Id.* ¶ 83. Specifically, Biomed alleges that on April 11, 2008, Oxford began issuing Remittance Advices indicating that the Patient had no liability for Biomed's services, despite the fact that this assertion contradicted "Oxford's repeated insistence that it was the Patient's failure to personally pay his $5,000 deductible/coinsurance that relieved Oxford of its obligation to pay 100% of Patient's benefit claims." *Id.* ¶ 84. *See also id.* ¶¶ 83–87. Biomed also alleges that Oxford has refused to revisit its prior reductions despite its tacit acknowledgment that the reductions were improper, and has treated the Patient differently from similarly situated members. *Id.* ¶¶ 136, 138. Biomed claims that Oxford's actions violated 29 U.S.C. § 1104(a)(1), which requires fiduciaries to act solely in the interest of participants and beneficiaries. *Id.* ¶ 130.

Fourth, Biomed alleges Oxford caused it direct injury unrelated to that suffered by the Patient by making "false and defamatory statements of fact" that "have cast negative aspersions on the basic character and integrity of Biomed's business operations, resulting in injury to its reputation, lost revenues from patients and/or potential patients, and to damaged business relationships, including referral sources." *Id.* ¶¶ 101, 150. For example, Biomed alleges, among other things: (1) that "on or following August 16, 2009," Jacqueline Rivera called the Patient's mother and told her that Biomed was charging more money than any other health care company, *id.* ¶¶ 102–03; (2) that Oxford subsequently called several of Biomed's patients, and "through the disparagement of Biomed," attempted to convince them to obtain services from in-network providers, *id.* ¶ 104; (3) that Oxford contacted at least one physician who had referred patients to Biomed and falsely told his office manager that Biomed was not licensed to dispense medication in that state, *id.* ¶ 106; and (4) that Oxford falsely informed individuals at the New Jersey Department of Banking and Insurance that Biomed was dispensing pharmaceuticals in the state without the required license, *id.* ¶ 107.

■ With these allegations in mind, the Court first considers Oxford's motion to dismiss Biomed's three ERISA § 502(a)(3) claims: Counts Two, Three, and Four. For each of these claims, Biomed seeks "declaratory and/or injunctive relief." *See* 2d Am. Compl. ¶¶ 122, 128, 140. Oxford argues, however, that the assignment provision, which provides Biomed standing to pursue this action as an assignee of the Patient, is limited in scope and does not entitle Biomed to seek such relief. The assignment provision states, in relevant part:

PAYMENT AUTHORIZED AND ASSIGNMENT OF BENEFITS: I hereby authorize Oxford to make payment to Biomed Pharm Inc. for authorized ser-

vices provided, in consideration of Biomed Pharm Inc. [sic] agreement to forego collection of my account for a reasonable period of time. I hereby assign to Biomed Pharm Inc. or its legal representative, all of my rights, including the right to sue on my behalf or name, under policy number [ ] issued by Oxford, to recover damages for services rendered by Biomed Pharm Inc. This assignment shall not extinguish or diminish my obligation to pay the full fee to Biomed Pharm Inc. for services rendered....

*See* 2d Am. Compl. Ex. C ¶ 5. While Biomed argues that this provision allows Biomed to enforce "all of [the Patient's] rights" under the Plan, Oxford points out that the right to sue on behalf of the Patient is limited to actions to "recover damages for services rendered by Biomed Pharm Inc." *Id.* The Court agrees that the language highlighted by Oxford does indeed limit Biomed's right to sue on behalf of the Patient to actions for money damages. Accordingly, the assignment provision does not grant Biomed the right to seek "declaratory and/or injunctive relief," and Counts Two through Four must be dismissed for this reason alone.

Even assuming, contrary to fact, that the assignment provision was ambiguous, the challenged ERISA Counts must be dismissed for independent reasons. Quite apart from certain alleged technical defects (which the Court need not reach), these Counts are all brought pursuant to ERISA § 502(a)(3), which states that "[a] civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...." 29 U.S.C. § 1132(a)(3) (emphasis supplied).[3] For each Count, Biomed seeks "declaratory and/or injunctive relief." However, Biomed fails to indicate the specific relief it actually seeks, arguing instead that "what equitable relief is appropriate is ultimately for the Court to decide if Biomed succeeds on its ERISA § 502(a)(3) claims." Plaintiff Biomed Pharmaceuticals Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Biomed Mem.") at 10.[4] This is not an adequate response: it is not for the Court to speculate as to what declaratory or injunctive relief a sophisticated party like Biomed is seeking. Indeed, Biomed's dodging of this question reflects the inapplicability of equitable relief to these Counts. Specifically, Biomed alleges that Oxford failed to provide a full and fair review of an adverse benefit determination (Count Two), that it failed to provide adequate notice of the specific reason for the denial of the Patient's claims (Count Three), and that it breached its fiduciary duties by, *inter alia*, "refus[ing] to re-visit its prior reductions" despite its tacit acknowledgment that the reductions were improper (Count Four). As an initial matter, there is no ongoing practice that the Court could possibly enjoin. Biomed's

---

**3.** *See also CIGNA Corp. v. Amara,* —— U.S. ——, 131 S.Ct. 1866, 179 L.Ed.2d 843 (U.S. 2011) ("We have interpreted the term 'appropriate equitable relief in § 502(a)(3) as referring to " 'those categories of relief' " that, traditionally speaking (i.e., prior to the merger of law and equity) " 'were *typically* available in equity.' " ' ") (quoting *Sereboff v. Mid* Atl. Med. Servs., 547 U.S. 356, 361, 126 S.Ct. 1869, 164 L.Ed.2d 612 (U.S.2006)).

**4.** *See Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 89 (2d Cir.2001) ("Ultimately, we believe that the determination of 'appropriate equitable relief' rests with the district court should plaintiffs succeed on both claims.")

own complaint alleges that, as of April 21, 2010, Oxford no longer reduced the Patient's claims "by an additional amount of patient responsibility." 2d Am. Compl. ¶ 73.

■■■■ More fundamentally, the Court concludes that these three claims are legal rather than equitable in nature as they may be adequately redressed by money damages. The Supreme Court has held that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In this case, the Court finds that Biomed's three ERISA § 502(a)(3) claims are in fact entirely duplicative of its claim for benefits under ERISA § 502(a)(1)(B), as the gravamen of all three Counts is that Oxford improperly denied the Patient benefits to which he was entitled under the Plan. *See Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir.2006) ("While the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available.").[5]

Second Circuit cases have made clear that *Varity* did not eliminate the possibility of a plaintiff successfully asserting a claim under both ERISA § 502(a)(1)(B) and ERISA § 502(a)(3), but rather indicated that equitable relief under § 502(a)(3) would not "normally" be appropriate. *See Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir.2001) ("We note that should plaintiffs' claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of fiduciary duty claim is their only remaining remedy. *Varity Corp.* clearly provides that, where a plan participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under § 502(a)(3)."). Instructive in this regard is the Second Circuit's opinion in *Frommert v. Conkright*, 433 F.3d 254 (2d Cir.2006). The plaintiffs in *Frommert* sought two forms of equitable relief: (1) a declaration that the "phantom account" at issue violated ERISA and an injunction against its future use; and (2) leave to bring a claim for breach of fiduciary duty by the plan administrators. *Id.* at 269. With respect to the first request, the Second Circuit held that the relief sought fell "comfortably within the scope of § 502(a)(1)(B)." *Id.* at 270. Accordingly, the Court concluded that "[b]ecause adequate relief is available under this provision, there is no need on the facts of this case to also allow equitable relief under § 502(a)(3)." *Id.* With respect to the second request, however, the Second Circuit reversed the district court's dismissal of plaintiff's claim for breach of fiduciary duty in part because it "disagree[d] with the district court's conclusion that all of the relief sought by the plaintiffs in their claim for breach of fiduciary duties [could] be adequately addressed by the relief available under § 502(a)(1)(B)." *Id.* at 272.[6]

---

5. *See also Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112, 119 (2d Cir.2009) ("Furthermore, § 1132(a)(3) only applies to claims for injunctive relief, and despite Kendall's assertions to the contrary, many of Kendall's claims are effectively claims for money damages outside the scope of § 1132(a)(3).").

6. *See also Pelosi v. Schwab Capital Markets, L.P.*, 462 F.Supp.2d 503, 515 (S.D.N.Y.2006) ("The Court notes that while the Second Circuit in *Frommert* upheld dismissal of the § 502(a)(3) claim to the extent it sought monetary damages for the alleged breach of an ERISA plan, it reversed the district court's dismissal of a § 502(a)(3) claim for breach of fiduciary duty based on a different set of

Accordingly, the Court concludes that Biomed's Section 502(a)(3) claims would survive only if they sought relief that could not adequately be addressed by the relief available under Section 502(a)(1)(B). Section 502(a)(1)(B) allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In this case, since the gravamen of the three challenged ERISA claims is that Oxford failed to follow proper procedures in denying the Patient's claim for benefits, which resulted in an improper denial of benefits owed to the Patient under the terms of the Plan, adequate relief for these claims is plainly available under Section 502(a)(1)(B). Accordingly, the Court concludes that Counts Two, Three, and Four must be dismissed on this ground as well.

■ Having determined that the three challenged ERISA Counts must be dismissed, the Court turns to Count Five— "Commercial Defamation/ Slander Per Se"—the one state-law claim pled in the Second Amended Complaint. Count Five must be dismissed for at least two related reasons. First, the claim is time-barred by the applicable one-year statute of limitations. *See* New York's Civil Practice Law and Rules ("CPLR") § 215(3). Count Five identifies only one date—August 16, 2009—on which Oxford allegedly made defamatory statements, *see* 2d Am. Compl. ¶ 102, a date more than one year prior to

the commencement of this action on August 19, 2010. Biomed argues that this defect should be excused because it has alleged that Oxford made defamatory statements "[o]n or *following* August 16, 2009." 2d. Am. ¶ 102 (emphasis supplied). This argument is without merit. Defamation claims must be pled with some specificity, as explained below, and Biomed cannot satisfy this requirement by vaguely asserting that Oxford made defamatory statements at some unspecified time following a date that itself falls outside the statute of limitations.

■ Second, Biomed's allegations are otherwise insufficient to survive a motion to dismiss. The elements of a defamation claim under New York law are "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se (Restatement [Second] of Torts § 558)." *Dillon v. City of New York,* 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (N.Y.App.Div.1999). "While a complaint for defamation need not be absolutely specific with regard to the statements at issue, it must give a defendant 'sufficient notice of the communications complained of to enable [it] to defend [itself].'" *Rivers v. Towers, Perrin, Forster & Crosby Inc.,* No. CV–07–5441, 2009 WL 817852, *6 (E.D.N.Y. March 27, 2009) (quoting *Reilly v. Natwest Markets Group Inc.,* 181 F.3d 253 (2d Cir.1999) (quotation omitted, brackets in original)).[7]

---

factual allegations asserting misrepresentations of the plan terms. *See id.* at 272. Here, however, Pelosi does not allege facts and conduct with respect to his fiduciary duty claim that are in any way different from the allegations supporting his other ERISA causes of actions. Consequently, the Court finds in this action there is no 'appropriate equitable relief' necessary to remedy the harm alleged that is not adequately addressed by the relief available under § 502(a)(1)(B).").

7. This is a matter of federal, not state law. *See, e.g., DiFolco v. MSNBC Cable, LLC,* 622 F.3d 104, 110–11, 113–14 (2d Cir.2010) (confirming that Rule 8 pleading standard applies to defamation claims); *Gmurzynska v. Hutton,* 355 F.3d 206, 208–209 (2d Cir.2004) (same); *Amar v. Hillcrest Jewish Ctr.,* 05–CV–03290, 2009 WL 891795, at *7, 2008 U.S. Dist. LEXIS 108180, at *21 (E.D.N.Y. Mar. 31, 2009) (same).

Specifically, "a pleading is only sufficient if it adequately identifies the purported communication" and provides "an indication of who made the communication, when it was made, and to whom it was communicated." *Camp Summit of Summitville, Inc. v. Visinski*, No. 06–CV–4994 (CM)(GAY), 2007 WL 1152894, at *10 (S.D.N.Y.2007) (internal quotation marks and citations omitted).

■ In this case, with the exception of the date that is time-barred by the statute of limitations, Biomed fails to specify when any of the allegedly defamatory remarks were made by Oxford. Similarly, the only Oxford employee Biomed identifies as having made an allegedly defamatory statement, Jacqueline Rivera, is mentioned only in connection with the statement purportedly made on August 16, 2009. Otherwise, Biomed fails to identify which individuals at Oxford made defamatory statements. Additionally, Biomed fails to adequately specify to whom the purported statements were made, alleging only vaguely that they were made to unidentified patients of Biomed, unidentified physicians, and unidentified individuals at the New Jersey Department of Banking and Insurance.[8] *See* 2d Am. Compl. ¶¶ 104–107. Thus, Biomed fails to provide sufficient notice of the alleged defamatory statements to allow Oxford to prepare a defense, and Count Five must accordingly be dismissed.

For the foregoing reasons, the Court hereby affirms its April 19, 2011 Order dismissing, with prejudice, all Counts of Biomed's Second Amended Complaint with the exception of Count One.

---

**8.** Biomed also alleges that defamatory statements were made to the Patient's mother, but only with respect to the statement purportedly made "[o]n or following August 16, 2009." 2d Am. Compl. ¶¶ 102–103.